IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Harrisburg        :
                           :
               v.          : No. 1982 C.D. 2015
                           : Argued: June 7, 2017
Joshua Prince, Esq.,    :
                           :
          Appellant   :

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
                HONORABLE RENÉE COHN JUBELIRER, Judge
                HONORABLE ROBERT SIMPSON, Judge
                HONORABLE P. KEVIN BROBSON, Judge
                HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE MICHAEL H. WOJCIK, Judge

OPINION BY JUDGE WOJCIK        FILED: May 10, 2018

Joshua Prince, Esq. (Requester) appeals the order of the Dauphin County Court of Common Pleas (trial court) affirming in part, and reversing in part, a Final Determination of the Pennsylvania Office of Open Records (OOR). The trial court affirmed that portion of OOR's Final Determination finding that no other responsive records exist in the custody or control of the City of Harrisburg (City) and reversed that portion of the Final Determination directing that the identity of the names and addresses of donors to the "Protect Harrisburg Legal Defense Fund" (Fund) contained in a spreadsheet that lists check dates, check numbers, names, addresses, phone numbers, and amounts of monetary contributions (Spreadsheet) be disclosed pursuant to the Right-to-Know Law (RTKL).[1] We affirm.

On February 25, 2015, Requester submitted a request to the City (Request) under the RTKL that sought the following records:

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§67.101-67.3104.

This is a request for all records, including, but not limited to, financial records pursuant to Section 102,[2] since January of 2015, relating to the *US Law Shield, et al. v. City of Harrisburg, et al.* and *Firearm Owners Against Crime, et al. v. City of Harrisburg, et al.* [cases] including, but not limited to the following: (1) All records, including, but not limited to, [the City's Fund] . . . [a]s provided for by Section 102, this specifically includes, but is not limited to, *the names, addresses, and amounts of any donations to/receipts by the [City]*; (2) All records, including, but not limited to, all financial accounts and financial institutions utilized by the [City] in relation to request (1); (3) All records, including, but not limited to, contracts, communications, and billings from or to Lavery, Faherty, Patterson or any other law firm or attorney hired to review the legal issues relating to request (1); and (4) Any other record in any way relating to the current litigation specified above.

Reproduced Record (R.R.) at 9a (emphasis added).

On February 26, 2015, the City partially denied the request pursuant to Section 708(b)(13) of the RTKL, 65 P.S. §67.708(b)(13),[3] and provided Requester

---

[2] Section 102 of the RTKL defines "financial record," in pertinent part, as "[a]ny account, voucher or contract dealing with . . . the receipt or disbursement of funds by an agency [] or . . . an agency's acquisition, use or disposal of services, supplies, materials, equipment or property." 65 P.S. §67.102.

[3] Section 708(b)(13) states:

> **(b) Exceptions.**—Except as provided in subsections (c) and (d), the following are exempt from access by a requester under this act:
>
> * * *
>
> (13) Records that would disclose the identity of an individual who lawfully makes a donation to an agency unless the donation is intended for or restricted to providing remuneration or personal tangible benefit to a named public official or employee of the agency, including lists of potential donors compiled by an agency to

2

with a redacted donor list. R.R. at 10a, 14a, 18a. The City's open records officer (Records Officer) redacted the names, addresses, check numbers, and telephone numbers[4] of the donors who contributed to the Fund and provided the donation amounts to Requester. *Id.* at 12a. The Records Officer also explained that the City did not have any formal agreement or letter with the Lavery law firm, in that the City's former insurance company retained the firm; the City's new insurance company continued with the firm; the firm's hourly rate is $125.00; and, currently, there is no bill. *Id.* at 16a. On March 2, 2015, the Records Officer provided Requester with an updated, redacted donor list via email and indicated that the City uses Citizens Bank for the Fund account; there is currently no bill from the Lavery firm; no other firm is working on anything relating to the Fund; and asserted that any communications from the Lavery firm are protected by the attorney-client privilege. *Id.* at 19a-22a. Requester did not subsequently clarify the Request.

On March 11, 2015, Requester appealed to the OOR, challenging the City's partial denial of the Request and asserting grounds for disclosure. R.R. at 24a, 36a. On March 12, 2015, the OOR invited the parties to supplement the record and directed the City to notify third parties of their ability to participate in the appeal.

---

pursue donations, donor profile information or personal identifying information relating to a donor.

In turn, Section 708(c) states:

**(c) Financial records.**—The exceptions set forth in subsection (b) shall not apply to financial records, except that an agency may redact that portion of a financial record protected under subsection (b)(1), (2), (3), (4), (5), (6), (16) or (17).

65 P.S. §67.708(c).

[4] The donor telephone numbers are not at issue in this appeal.

*Id.* at 32a-33a.  On March 18, 2015, the Records Officer reiterated his reason for redacting the donor records, stating that he was unsure what contracts or bank institution information was requested, and asking Requester to be specific so that he can try to get the requested documents.  *Id.* at 31a.

On March 23, 2015, Requester submitted a brief in support of his appeal, arguing that the City did not meet its burden of proving that the requested records were exempt from disclosure, and that the exception under Section 708(b)(13) of the RTKL does not apply because the donations to the Fund are intended for the personal tangible benefit of the Mayor and City Council members who are public officials and employees of the City.  R.R. at 41a.  Requester also asserted that the City did not provide all of the requested records, including "account numbers, account totals, and other information relating to the financial accounts utilized by the City" with respect to the Fund; all "records relating to the implementation, control, maintenance and function" of the Fund; documents executed in establishing the Fund; contracts, communications, and billings from or to the Lavery firm; and any other records relating to the *U.S. Law Shield* litigation, including City Council meeting minutes.  R.R. at 42a-43a.  Requester also argued that the communications between the City's insurance company and the Lavery firm would be subject to disclosure under Section 506(d)(1) and (3) of the RTKL.  *Id.* at 43a.[5]  Finally, Requester claimed that, to the extent that the Records Officer failed

---

[5] 65 P.S. §67.506(d)(1), (3).  Section 506(d)(1) and (3) state, in pertinent part:

**(d)  Agency possession.—**

(1)  A public record that is not in the possession of an agency but is in the possession of a party with whom the agency has contracted to perform a governmental function on behalf of the agency, and which

to disclose any other records relating to the litigation, this lack of response must be viewed as a deemed denial and that the Records Officer should be ordered to disclose those documents. *Id.*

In order to fully develop the record on appeal, the OOR requested the following additional information from the City in the form of an affidavit: (1) what the Fund is; (2) whether the Fund is a City financial account or one of a third party for profit or non-profit; (3) whether the amounts are donated to the City or a third party; and (4) whether the donors on the redacted list are individuals, corporations, entities, etc. R.R. at 45a.

In response, the City's Solicitor, Neil Grover, provided an unsworn statement providing the following: (1) the Fund is "a subaccount/line item of the Police Protection Special Revenue Fund (SPF) of the City"; (2) "[a]ll SPFs have their own bank account. All expenditures from this fund are line item appropriated by Council as per the normal budgeting process"; (3) "[a]ll revenues received for this SPF are donated directly to the City, deposited by Treasury (checks are written to 'City Treasurer') and accounted for in the City's General Ledger/accounting system"; and (4) all donors on the redacted list provided are individuals, not corporations or any other entities. R.R. at 72a. The Solicitor asserted that because the donor information is exempt from disclosure, the City is not required to give

---

directly relates to the governmental function and is not exempt under this act, shall be considered a public record of the agency for purposes of this act.

\* \* \*

(3) A request for a public record in possession of a party other than the agency shall be submitted to the open records officer of the agency.

third parties notice pursuant to Section 707(a) of the RTKL, 65 P.S. §67.707(a). *Id.* at 75a-76a.

The Solicitor also provided a sworn attestation made under the penalty of perjury, stating that the Records Officer, in consultation with Solicitor Grover, thoroughly examined the files in the possession, custody, and control of the City for records responsive to the request, that inquiries with relevant City personnel and third-party contractors were made in determining whether any responsive records were in their possession, and that the City made a good faith effort in providing all responsive records, in addition to the supplemental information requested by OOR. R.R. at 78a-79a.

On April 9, April 17, and April 27, 2015, Requester submitted further support for his appeal including, *inter alia*, the trial court's opinion in *U.S. Law Shield of Pennsylvania, LLC v. City of Harrisburg*, (C.C.P. Dauph., No. 2015 CV 00255 EQ, filed February 25, 2015) (holding that at least three of the City's gun ordinances were unlawful and granting a preliminary injunction in relation to the enforcement of those ordinances),[6] arguing that the donations being made to the City in relation to the City's ordinances are unlawful in light of *U.S. Law Shield*, and that Section 708(b)(13) does not apply because it only applies to "lawful" donations. R.R. at 50a, 55a. Requester argued that the City failed to notify any third parties in the matter pursuant to Section 1101(c) of the RTKL, 65 P.S. §67.1101(c).[7] R.R. at

---

[6] On appeal to this Court, *U.S. Law Shield* was vacated and remanded to the trial court by per curiam order in *U.S. Law Shield of Pennsylvania v. City of Harrisburg*, (Pa. Cmwlth., No. 449 C.D. 2015, filed October 28, 2015), based on this Court's opinion and order declaring Act 192 of 2014 unconstitutional in *Leach v. Commonwealth*, 118 A.3d 1271 (Pa. Cmwlth. 2015), which was affirmed by our Supreme Court in *Leach v. Commonwealth*, 141 A.3d 426 (Pa. 2016).

[7] Section 1101(c)(1) states:

50a, 85a. Requester also claimed that in response to an almost identical request to the City of Lancaster, that city produced 418 pages of applicable records. *Id.* at 84a, 87a. Requester challenged the veracity of the Solicitor's attestation, requested an in camera review of all records in the City's possession relating to his RTKL request, and again questioned whether notice was given to third parties. *Id.* at 84a-85a.

On April 27, 2015, OOR issued its Final Determination granting in part, and denying in part, Requester's appeal. R.R. at 122a, 124a-125a. OOR concluded that because the City submitted only an unsworn attestation from its solicitor and not a sworn affidavit or statement establishing that Section 708(b)(13) applies, the City failed to meet its burden of proving that the requested donor information is exempt from disclosure under the RTKL. R.R. at 123a. OOR also concluded that the City had demonstrated that no other responsive records exist in its possession, custody, or control, relying on the Solicitor's sworn attestation included at the end of his response to the OOR's request for additional information. R.R. at 124a. The OOR directed that the City provide an unredacted donor list to Requester within 30 days of the determination, subject to this Court's holding in *Pennsylvania State Education Association ex rel. Wilson v. Department of Community and Economic Development*, 110 A.3d 1076 (Pa. Cmwlth. 2015) (*PSEA II*)[8] (enjoining the OOR

> (1) A person other than the agency or requester with a direct interest in the record subject to an appeal under this section may, within 15 days following receipt of actual knowledge of the appeal but no later than the date the appeals officer issues an order, file a written request to provide information or to appear before the appeals officer or to file information in support of the requester's or agency's position.

65 P.S. §67.1101(c)(1).

[8] On October 18, 2016, the Pennsylvania Supreme Court reversed this Court's decision in *PSEA II* in *Pennsylvania State Education Association ex rel. Wilson v. Department of Community and Economic Development*, 148 A.3d 142 (Pa. 2016).

and public school districts from disclosing the home addresses of public school employees until the affected employees have had written notice and a meaningful opportunity to object at the request stage as required by Article I, Section 1 of the Pennsylvania Constitution). R.R. at 123a, 125a. On May 27, 2015, the City appealed the OOR's Final Determination to the trial court.

In its petition for review, the City argued, *inter alia*, that OOR erred as a matter of law and abused its discretion in: (1) disregarding the donor exception in Section 708(b)(13) of the RTKL and in directing the release of that information to Requester, which would "subject[] [the donors] to harassment and den[y] them the statutory right to non-disclosure"; and (2) "misapplying municipal law on the protections afforded local officials . . . who are identified in claims against a municipal government," as the City is the sole party responsible for paying the legal fees associated with the actions for which the Fund was created. R.R. at 131a-133a.

In his cross-petition for review, Requester argued, *inter alia*, that OOR erred as a matter of law, and that the City still has other responsive documents in its possession. R.R. at 262a-267a. Requester also submitted a brief in support of OOR's Decision and an affidavit, arguing for the first time that the donor exception in Section 708(b)(13) does not apply to financial records under Section 708(c), which "prevents the application of [65 P.S.] §67.708(b)(13) to financial records as a matter of law." R.R. at 12b, 43b-48b.[9] The City filed another brief and a sworn affidavit of the Solicitor,[10] in which he maintained that the donor names and

---

[9] Requester also filed a motion to disqualify the Solicitor, which the trial court denied based on Requester's failure to follow the local rules.

[10] The affidavit stated, "the City set up and promoted . . . [the F]und to help the City defray legal expenses associated with defending challenges to local firearm ordinances," because the City is legally obligated to cover the cost of defending City officials in civil actions and, thus, the

8

addresses were properly redacted pursuant to the donor exception in Section 708(b)(13) of the RTKL, the City conducted a good faith review of the City's records, and that the City properly raised the attorney-client and attorney work product privileges. *Id.* at 421a-423a, 133b.

On September 24, 2015, following two hearings and oral argument, the trial court issued a Memorandum and Order disposing of the City's appeal. The trial court affirmed OOR's determination that no other responsive records exist in the custody or control of the City, and reversed the OOR's determination that the identity of the donors to the Fund must be disclosed. Trial Court 9/24/15 Memorandum and Order at 3, 4. The trial court concluded that the supplemental affidavit of the Solicitor submitted to the court was "competent evidence," "indicates that the [F]und was set up by the City to help the City defray legal expenses associated with defending challenges to local firearm ordinances," and "that the donations at issue cannot and do not provide remuneration or personal tangible benefit to any public official or employee of the City." *Id.* at 2. As a result, the trial court determined that "the City has met its burden of proving that the donor information is exempt from disclosure" under Section 708(b)(13) of the RTKL. *Id.* The trial court also determined that the City established that no other responsive records exist in its possession, accepting as true the Solicitor's sworn attestation that was submitted to the OOR. *Id.* at 3. Requester now appeals the trial court's order to this Court.

**I.**

---

donations cannot be for the personal tangible benefit of any public official or employee of the City. R.R. at 421a.

9

On appeal,[11] Requester first argues that the trial court erred in reversing OOR's determination that the names and addresses of the private donors to the Fund contained in the Spreadsheet must be disclosed because it is a "financial record" as defined in Section 102 of the RTKL.[12] Requester asserts that the Spreadsheet

---

[11] Our standard of review is limited to determining whether the trial court committed an error of law, violated constitutional rights, or abused its discretion. *SWB Yankees LLC v. Wintermantel*, 999 A.2d 672, 674 n.2 (Pa. Cmwlth. 2010), *aff'd*, 45 A.3d 1029 (Pa. 2012). "'The scope of review for a question of law under the [RTKL] is plenary.'" *Id*. (quoting *Stein v. Plymouth Township*, 994 A.2d 1179, 1181 n.4 (Pa. Cmwlth. 2010)).

[12] As a corollary to this claim, Requester argues that the donations made to the Fund are unlawful under Sections 6119 and 6120 of the Uniform Firearms Act, 18 Pa. C.S. §§6119, 6120, and *U.S. Law Shield*. However, these claims are not raised in Requester's Dauphin County Local Rule 227.1A Concise Statement and are not addressed by the trial court in its Pa. R.A.P. 1925(a) Memorandum Opinion. R.R. at 234b-236b; Trial Court 2/2/16 Memorandum Opinion. As a result, these claims have been waived for purposes of appeal. *See* Dauphin County Local Rule 227.1A ("In *every* appeal from an order . . . of this Court to which no post-trial motions . . . were filed but such appeal is taken directly to an appellate court, appellant's counsel *shall*, immediately upon taking the appeal, file of record a concise statement of the matters complained of and intended to be argued on appeal [(Concise Statement)], and *shall* serve a copy thereof upon the judge from whose order . . . the appeal was taken . . . .") (emphasis added). *See generally Commonwealth v. Barnes*, 151 A.3d 121, 124 (Pa. 2016) ("Typically, an appellant waives any claim that is not properly raised in the first instance before the trial court and preserved at every stage of his appeal."); *Commonwealth v. Burchard*, 503 A.2d 936, 938-39 (Pa. Super.), *appeal denied sub nom. Commonwealth v. Van Slochem*, 523 A.2d 1131 (Pa. 1986) ("Our Courts have repeatedly held that issues must be preserved at each and every stage of review; otherwise, they are deemed waived and cannot subsequently be raised on appeal."). *See also Appeal of Borough of Churchill*, 575 A.2d 550, 554-55 (Pa. 1990) (holding that trial courts have the ability to enact local rules adopting a post-trial statutory appeal practice and procedure so long as the rules do not conflict with or violate the Constitutions or laws of the United States or the Commonwealth or our state-wide rules); Pa. R.A.P. 1925(b)(4)(i), (vii) ("If the judge entering the order giving rise to the notice of appeal ("judge") desires clarification of the errors complained of on appeal, the judge *may* enter an order directing the appellant to file of record in the trial court and serve on the judge a [Concise Statement]. . . . The [Concise] Statement *shall* set forth only those rulings or errors that the appellant intends to challenge. . . . Issues not included in the [Concise] Statement and/or not raised in accordance with the provisions of this paragraph [] are waived.") (emphasis added). Nevertheless, Requester's reliance on the opinion in *U.S. Law Shield* is misplaced as he fails to

containing the donor information provided in relation to the Request is clearly an "account" or "voucher" that deals with the "receipt . . . of funds by an agency" and, therefore, falls within the definition of "financial record" in Section 102. Thus, although the records would disclose the identity of the individual making the donation, and personal identifying information that is otherwise exempt under Section 708(b)(13) (because the donor records in this case are contained within a financial record), Requester argues that the records are subject to disclosure under Section 708(c) of the RTKL. Thus, Requester contends that the donor information must be disclosed.[13]

The City counters that the trial court did not err in reversing OOR's determination because the donor information is protected under Section 708(b)(13). The City contends that Section 706 of the RTKL, 65 P.S. §67.706,[14] permits the

_____

mention that, as outlined above, it was vacated and remanded to the trial court on appeal to this Court. *See supra* n.6.

[13] The City asserts that Requester has waived the Section 708(c) issue because it was not raised in his cross-petition for review. However, Requester raised this issue in the brief filed in the trial court in support of the cross-petition for review, at the second hearing before the trial court, in his Concise Statement and in his appellate brief to this Court. R.R. at 10b, 12b, 214b, 234b. Thus, the issue is not waived.

[14] Section 706 states, in relevant part:

> If an agency determines that a public record . . . or financial record contains information which is subject to access as well as information which is not subject to access, the agency's response shall grant access to the information which is subject to access and deny access to the information which is not subject to access. If the information which is not subject to access is an integral part of the public record . . . or financial record and cannot be separated, the agency shall redact from the record the information which is not subject to access, and the response shall grant access to the information which is subject to access. The agency may not deny access to the record if the information which is not subject to access

11

redaction of financial records, and if the definition of "financial record" in Section 102 is read too broadly, as Requester suggests, the donor exception in Section 708(b)(13) will be rendered a nullity.

In interpreting the RTKL, we are guided by the well-recognized principles of statutory construction. Pursuant to Section 1921(a) of the Statutory Construction Act of 1972, "[t]he object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly," and "[e]very statute shall be construed, if possible, to give effect to all its provisions." 1 Pa. C.S. §1921(a). In ascertaining the intent of the Legislature in enacting a statute, Section 1922 states that it is presumed "[t]hat the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable" and "intends [that] the entire statute . . . be effective and certain." 1 Pa. C.S. §1922(1), (2). Moreover, Section 1921(b) provides, "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa. C.S. §1921(b).

Under Section 305 of the RTKL, 65 P.S. §67.305, there is a presumption that all records in the possession of a local agency are presumed to be public records unless: (1) a record is exempt under Section 708; (2) a record is protected by a privilege; or (3) a record is exempt from disclosure under any other Federal or State law or regulation or judicial order or decree. "Record" is defined, under Section 102, as follows:

is able to be redacted. Information which an agency redacts in accordance with this subsection shall be deemed a denial under Chapter 9.

65 P.S. §67.706.

12

> Information, regardless of physical form or characteristics, that documents a transaction or activity of an agency and that is created, received or retained pursuant to law or in connection with a transaction, business or activity of the agency. The term includes a document, paper, letter, map, book, tape, photograph, film or sound recording, information stored or maintained electronically and a data-processed or image-processed document.

65 P.S. §67.102.

Relevant to the Request herein, Section 708(b)(13) exempts from access "[r]ecords that would disclose the identity of an individual who lawfully makes a donation to an agency . . . including . . . donor profile information or personal identifying information relating to a donor," except as provided in Section 708(c). 65 P.S. §67.708(b)(13). Section 708(c) provides that "[t]he exceptions set forth in subsection (b) *shall not apply to financial records*," except that an agency may redact that portion of a financial record protected under specified Subsections of Section 708(b), of which Subsection (b)(13) is not included. 65 P.S. §67.708(c) (emphasis added). As noted above, "financial record" is defined in Section 102 in pertinent part, as "[a]ny account, voucher or contract dealing with . . . the receipt or disbursement of funds by an agency [] or . . . an agency's acquisition, use or disposal of services, supplies, materials, equipment or property." 65 P.S. §67.102.

With respect to the ambit of what constitutes a "financial record" under Sections 102 and 708(c), the Supreme Court has explained:

> [W]hile [the agency and its contractors] would prefer to emphasize the definitional language associating contracts and disbursements with a government agency, the statute plainly reaches more broadly via its prescription that "financial records" encompass records "dealing with" disbursements of public money and services acquisitions by agencies. *See* 65 P.S. § 67.102; *cf. N. Hills News Record v. Town of McCandless*, [722 A.2d 1037, 1039 (Pa. 1999)] (explaining that language within the former open-

13

> record's law's definition of "public record"—which the Legislature reposited in the definition of "financial record" under the new Law—reaches some range of records beyond accounts, vouchers, or contracts, subsuming records which "bear a sufficient connection" to such fiscally-related categories).

*Department of Public Welfare v. Eiseman*, 125 A.3d 19, 29-30 (Pa. 2015) (footnote omitted). *See also Pennsylvania State University v. State Employees' Retirement Board*, 935 A.2d 530, 534 (Pa. 2007) ("[T]he term 'account' is to be broadly construed for the benefit of the public, encompassing, at minimum, the Commonwealth's financial records of debit and credit entries, as well as monetary receipts and disbursements."); *LaValle v. Office of General Counsel*, 769 A.2d 449, 456 (Pa. 2001) ("[T]he [RTKL] reaches some class of materials that are not facially accounts, vouchers, contracts, minutes, orders or decisions. The general constraint upon this expanded class that became relevant in *McCandless* was that the party seeking to inspect government records must establish some close connection between one of the statutory categories and the materials sought.").

The names and addresses in the Spreadsheet sought herein are not sufficiently connected to any City account, voucher, or contract to constitute a financial record subject to disclosure under the RTKL; rather the information in the Spreadsheet is merely a collation of data with respect to the donors of private funds that is subject to exemption. The private funds voluntarily donated to the City by check were not "received" by the City, and did not become agency funds for purposes of the RTKL, until they were deposited into a City account, and the City's internal compilation of private donor information does not have a sufficiently close connection to such account to be considered a financial record under the RTKL. In short, records relating to the actual receipt and disbursement of the privately donated nongovernmental funds by the City into and from a City account are "financial

14

records" for purposes of the RTKL; documents unrelated to the foregoing financial transactions are not "financial records" and are subject to exemption. *See, e.g.*, *Tribune-Review Publishing Company v. Department of Community and Economic Development*, 859 A.2d 1261, 1268 (Pa. 2004) ("Neither 'the log' nor the information it contains could be characterized fairly as an account, contract, or voucher to accompany or memorialize funding. . . . While the database does indicate whether certain applications have been awarded Program funding, it is simply an electronic storage facility, and not a decisional document.").[15]

As a result, the trial court did not err in determining that the requested donor Spreadsheet information is exempt from disclosure under Section 708(b)(13) of the RTKL. *See The Municipality of Mt. Lebanon v. Gillen*, 151 A.3d 722, 729-30 (Pa. Cmwlth. 2016), *appeal denied*, 169 A.3d 539 (Pa. 2017) (holding that private individuals' volunteering of their time and services and the use of their property to a municipal program, without compensation, constitutes a "donation" for purposes of Section 708(b)(13), and affirming a trial court's holding that the donor exception applied to all but one of withheld emails containing donor information).

Moreover, if the Spreadsheet is deemed to be a "financial record" for purposes of Section 708(c) as Requester suggests, the donors' names and addresses would still be subject to redaction. It should be noted that Section 708(c) preserves

---

[15] *See also Global Tel\*Link Corporation v. Wright*, 147 A.3d 978, 981 (Pa. Cmwlth. 2016), *appeal denied*, 167 A.3d 715 (Pa. 2017) ("In *West Chester* [*University of Pennsylvania v. Schackner*, 124 A.3d 382, 385 (Pa. Cmwlth. 2015)], the requestor sought a copy of the contract between the agency and a contractor hired by the agency. The OOR held that no exemptions could be claimed for any portion of the contract because Section 708(c) of the RTKL, required full disclosure of the contract. *Id.* at 387. This court disagreed with the OOR that information contained within the contract had to be disclosed 'just because it is part of the contract.' *Id.* at 392. Here, a document, which is otherwise exempt under Section 708(b)(26) of the RTKL because it contains a bidder's financial information, is not transformed into a financial record not subject to the 708(b)(26) exemption simply because it is appended to the successful bidder's contract.").

the exception provided in Subsection (b)(6) that includes, in relevant part, "[t]he following personal identification information: . . . A record containing all or part of a person's . . . personal financial information [and] home, cellular or personal telephone numbers . . . ." 65 P.S. §67.708(b)(6)(i)(A). In turn, Section 102 defines "personal financial information" as "[a]n individual's personal credit, charge or debit card information; bank account information; bank, credit or financial statements; account or PIN numbers *and other information relating to an individual's personal finances*." 65 P.S. §67.102 (emphasis added).

In *Department of Conservation and Natural Resources v. Office of Open Records*, 1 A.3d 929 (Pa. Cmwlth. 2010), the Office of the Budget (Budget), the Department of Conservation and Natural Resources (DCNR), and the Department of General Services (DGS) (collectively, Agencies), appealed separate, but related, OOR decisions requiring the Agencies to release unredacted certified payroll records supplied to them by third-party contractors that had entered into contracts with the Commonwealth for public projects. The third-party contractors submitted the certified payroll records to the Agencies to prove their compliance with the Pennsylvania Prevailing Wage Act, Act of August 15, 1961, P.L. 987, *as amended*, 43 P.S. §§165-1 – 165-17 (PWA). The records contained information relating to each of the contractors' employees who worked on each project including each employee's name, Social Security number, home address, rate of pay, gross amount of wages earned, number of hours worked, amount deducted for taxes and/or benefits, and net pay. In response to RTKL requests for these records, the Agencies produced redacted versions. The requesters challenged the redacted records that were supplied to them, and OOR appeals officers directed the Agencies to release unredacted copies of the records. On appeal, the Agencies argued, *inter alia*, that

16

the names and addresses of their employees were properly redacted from the disclosed payroll records under the personal financial information exemption such that the information that was provided satisfied the requirements of the RTKL.

In reversing the OOR determinations and applying the personal financial exemption of Section 708(b)(6)(i)(A), we explained:

> Though the exemptions in subsection (b) of Section 708 of the RTKL do not apply to financial records, such as the certified payroll records here, subsection (c) nonetheless provides that an agency "may redact that portion of a financial record protected under subsection (b)(1), (2), (3), (4), (5), (6), (16) or (17)." *Id.* Here, the Agencies produced redacted copies of the certified payroll records. [OOR] held that the Agencies erred in redacting the names and/or home addresses of the third-party contractors' employees in those records. We find no error in the Agencies' decisions to exercise discretion afforded to them under the RTKL and to release the certified payroll records as redacted.

> In its brief to the [OOR] appeals officer, DCNR explained its reasons for redacting the home addresses as follows:

> > The certified payrolls that are the subject of the instant RTKL request contain the name of the employer and the name, address, job classification, hourly rate of pay, number of hours worked during the reporting period, wages and fringe benefits paid, and deductions made for each listed employee. These employees are not agency employees and there can be no question that this constitutes personal financial information. *However, in order to provide information that may be useful to monitor compliance with the [PWA], portions of the information have been supplied, but not the home address. When coupled with the other information*

17

*in the payroll records concerning their wages and employment, the home addresses of employees constitute "other information relating to an individual's personal finances" and should therefore be exempt from disclosure under section 708(b)(6)(i)(A).*

(R.R. at 9a (emphasis added)). This reasoning is persuasive and can be applied with equal force to Budget's and DGS's decisions to redact the names and addresses of the third-party contractors' employees—*nongovernmental employees*—from the certified payroll records. The financial information contained in the certified payroll records is only personal to the individual employees so long as the identity of the employees is attached to the information. Redaction of the names and/or addresses renders what was personal financial information, impersonal. The Agencies thus acted reasonably and within the bounds of their discretion by producing the certified payroll records in redacted form to protect the personal nature of the financial information contained in those records.

*Department of Conservation and Natural Resources*, 1 A.3d at 942 (emphasis in original and footnote omitted).

Likewise, herein, the personal identification information contained in the Spreadsheet, if deemed to be a financial record, includes personal financial information such as the donors' names, addresses, and telephone numbers that would also properly be redacted by the City pursuant to the exemption in Section 708(b)(6)(i)(A) of the RTKL.[16] In sum, the trial court did not err in reversing that portion of OOR's Final Determination finding that the donors' names and addresses

---

[16] This "Court may affirm the trial court for any reason so long as the basis of [the] decision is clear." *Schenck v. Township of Center*, 893 A.2d 849, 853 (Pa. Cmwlth. 2006), *appeal dismissed*, 975 A.3d 591 (Pa. 2009).

18

in the Spreadsheet are not subject to exemption under the relevant provisions of the RTKL, and Requester's claims to the contrary are without merit.

## II.

Requester next argues that the trial court erred in permitting the City to supplement the record by accepting the Solicitor's supplemental affidavit. However, Requester concedes that "it [was] within the Court's discretion to allow supplementation of the record," but "contends that the [City] should not be allowed to submit evidence that could have been submitted during the initial proceeding, which the [City] failed to do in a timely matter." Brief of the Appellant at 21.[17]

Indeed, the trial court's review of OOR's Final Determination pursuant to Section 1302 of the RTKL, 65 P.S. §67.1302,[18] was *de novo* and the court was specifically empowered to accept and consider the Solicitor's supplemental affidavit. As the Pennsylvania Supreme Court has explained:

> [A] full reading of the RTKL evidences a legislative intent that the Chapter 13 courts must necessarily expand the

---

[17] As a corollary to this claim, Requester also argues that OOR erred in permitting the City to supplement the record in the first instance. *See* Brief of the Appellant at 18-21. However, this claim was not raised in his Concise Statement and has been waived for purposes of appeal. *See supra* n.12.

[18] Section 1302(a) states, in relevant part:

> **(a) General rule.**—Within 30 days of the mailing date of the final determination of the appeals officer relating to a decision of a local agency . . . a requester or local agency may file a petition for review . . . with the court of common pleas for the county where the local agency is located. The decision of the court shall contain findings of fact and conclusions of law based upon the evidence as a whole.

65 P.S. §67.1302(a).

record, when required, to fulfill their statutory functions. As we observed, Section 1304 of the RTKL permits a Chapter 13 court to award costs and attorneys' fees, and to impose sanctions, after the court, not the appeals officer, makes relevant factual findings and legal conclusions. The necessary factual record for the significant decisions that the reviewing courts must make under Section 1304 (and Section 1305 pertaining to civil penalties) would quite likely not be found in a record confined solely to "the request, the agency's response, the appeal filed under section 1101, the hearing transcript, if any, and the final written determination of the appeals officer." 65 P.S. §67.1303(b). Indeed, Section 1304(a)(1) requires a court to make factual findings regarding whether an agency denying access to records acted "willfully or with wanton disregard" or "otherwise . . . in bad faith." 65 P.S. §67.1304(a)(1). In similar fashion, the RTKL contemplates that the foundational question of whether a record or document is exempt from disclosure is a factual one. 65 P.S. §67.708(a) (providing that the relevant government agency bears the "burden of proving . . . by a preponderance of the evidence" that an exemption applies).

Therefore, we hold that the Chapter 13 courts have the authority to expand their record to fulfill their statutory role. To interpret Section 1303(b) in any other manner creates a statutory scheme that is absurd, impossible of execution, and unreasonable. 1 Pa. C.S. §1922(1). Additionally, we note that the General Assembly has not specifically described Section 1303(b) as setting forth a "scope of review." Accordingly, the Commonwealth Court in the instant matter correctly held that it was entitled to the broadest scope of review.

*Bowling v. Office of Open Records*, 75 A.3d 453, 476-77 (Pa. 2013). *See also*

*Pennsylvania Housing Finance Agency v. Ali*, 43 A.3d 532, 534 n.7 (Pa. Cmwlth.

2012) ("[T]he RTKL does not prohibit this Court from considering evidence that

was not presented to the OOR. Indeed, in reviewing a decision of the OOR, this

Court is entitled to the broadest scope of review, while mindful to proceed in a

20

manner most consistent with justice, fairness and expeditious resolution.") (citation omitted).

In allowing the supplementation of the record, the trial court explained, "OOR's determination was based on the lack of any evidence, or more specifically the lack of an affidavit supporting the City's position that the redacted records were exempt. To cure this possible defect of the record below, the City supplements the record before this Court with the Affidavit of [the Solicitor]." Trial Court 9/24/15 Memorandum and Order at 2. In the absence of any alleged or perceived abuse of the trial court's discretion,[19] this Court will not reverse the trial court's action in this regard on appeal. *See Honaman v. Township of Lower Merion*, 13 A.3d 1014, 1025 (Pa. Cmwlth.), *appeal denied*, 31 A.3d 292 (Pa. 2011) ("'An abuse of discretion is not merely an error in judgment. Rather an abuse of discretion exists if the trial court renders a judgment that is [plainly] unreasonable, arbitrary or capricious, fails to apply the law, or was motivated by partiality, prejudice, bias or ill will. *If the record supports the trial court's reasons and factual basis, the court did not abuse its discretion*.'") (citation omitted and emphasis in original).

## III.

Requester also argues that the trial court erred in affirming the OOR's determination that no other responsive records existed in the possession, custody, or control of the City at the time of the Request. Specifically, Requester asserts that the City produced no records in response to Subsection (4) of the Request seeking

---

[19] *See, e.g., Chambersburg Area School District v. Dorsey*, 97 A.3d 1281, 1292 (Pa. Cmwlth. 2014) ("[F]rom a review of what transpired in this matter, the trial court abused its discretion by quashing [the r]equester's Motion to Supplement the Record and refusing to investigate [the r]equester's claim of bad faith on the part of the District.").

21

"Any other record in any way relating to the current litigation specified above." R.R. at 9a. In his brief, Requester explains that the records that he sought in this "catch-all" portion of the Request included: (1) an e-mail exchange between a City official and an official with the City of Lancaster (Lancaster) that he obtained through a RTKL request to Lancaster; (2) the public filings for the *U.S. Law Shield* case; (3) the minutes, notes and other documents from City Council meetings relating to funding or appropriations from the Fund per the normal budgeting process; (4) any contracts with insurance carriers or documents reflecting the indemnification of City officials involved in litigation; and (5) third-party billing records from the City's insurance carrier as evidenced in a newspaper article published seven days prior to submission of the Request. *See* Brief of the Appellant at 23-26.

However, Section 703 of the RTKL placed the initial burden on Requester to "identify or describe the records sought with sufficient specificity to enable [the City] to ascertain which records are being requested . . . ." 65 P.S. §67.703. *See Mollick v. Township of Worcester*, 32 A.3d 859, 871 (Pa. Cmwlth. 2011) ("[I]t is the requester's responsibility to tell an agency what records he or she wants."). In determining whether Requester has met his initial burden in this regard, we have explained:

> [T]his Court [has] set forth a three-part balancing test to evaluate whether a request was sufficiently specific, examining whether the request identified: (1) the subject matter of the request; (2) the scope of the documents sought; and (3) the timeframe for the records sought. While this test is a flexible one, the requirement that a requester identify the subject matter of a request necessitates that a requester "identify the transaction or activity of the agency for which the record is sought." In addition, the requirement that a requester identify the scope of the documents sought necessitates that a requester "identify a discrete group of documents either by

22

> type . . . or recipient." Finally, although the timeframe element of the "sufficiently specific" test is the most fluid when evaluating a requester's request, the request should identify "a finite period of time for which records are sought."

*Office of the District Attorney of Philadelphia v. Bagwell*, 155 A.3d 1119, 1143 (Pa. Cmwlth.), *appeal denied*, 174 A.3d 560 (Pa. 2017) (citations omitted).

Although Subsection (4) of the Request is sufficiently specific as to the subject matter and the timeframe of the records sought thereby, it is not sufficiently specific as to the scope of the documents sought because it does not "identify a discrete group of documents either by type . . . or recipient." *Id.* *See also Pennsylvania Housing Finance Agency*, 43 A.3d at 535 ("[T]he requests for 'all correspondence . . . concerning' the restructuring of the Tasker Village Mortgage and the Chestnut/56th Street Apartment's workout project 'and/or distributed to the Board' were insufficiently specific for [the agency] to respond to the requests."); *Pennsylvania State Police v. Office of Open Records*, 995 A.2d 515, 517 (Pa. Cmwlth. 2010) ("What is overbroad, though, is the first clause of the request, which begins, 'Any and all records, files, or manual(s), communication(s) of any kind . . . .' The portion of the request seeking any and all records, files or communications is insufficiently specific for the [agency] to respond to the request.") (citation omitted).

As a result, the City was not required to respond to Subsection (4) of the Request in the first instance and Requester's *post hoc* attempt to refine or specify the records sought thereby is unavailing. *See Smith Butz, LLC v. Pennsylvania Department of Environmental Protection*, 142 A.3d 941, 945 (Pa. Cmwlth. 2016) ("Once an RTKL request is submitted, a requester is not permitted to expand or modify the request on appeal.") (citation omitted); *Pennsylvania State Police*, 995 A.2d at 516 ("[T]he requester tells the agency what records he wants, and the agency

23

responds by either giving the records or denying the request by providing specific reasons why the request has been denied. The requester can then take an appeal to the OOR where it is given to a hearing officer for a determination. Nowhere in this process has the General Assembly provided that the OOR can refashion the request.").[20]

Nevertheless, assuming that the City was required to respond to Subsection (4) of the Request, the Solicitor's unsworn attestation and sworn affidavit are sufficient to show that no other responsive records existed in the possession, custody, or control of the City at the time of the Request. Section 901 of the RTKL, 65 P.S. §67.901, states, "Upon receipt of a written request for access to a record, an agency shall make a good faith effort to determine if the record requested is a public record . . . and whether the agency has possession . . . of the identified record . . . ." The burden of proving that an agency does not have a record is on the agency. *Hodges v. Pennsylvania Department of Health*, 29 A.3d 1190, 1192 (Pa. Cmwlth. 2011). "[A]n agency may satisfy its burden of proof that it does not possess a requested record with either an unsworn attestation by the person who searched for the record or a sworn affidavit of nonexistence of the record." *Smith Butz, LLC*, 142 A.3d at 945 (citation omitted). "In the absence of any competent evidence that the agency acted in bad faith or that the agency records exist, the averments in the [] affidavits should be accepted as true." *Id.* (citation omitted).

In the instant matter, to establish that it had provided all responsive records, the City submitted to the OOR an attestation of Solicitor Grover, stating that the City's Records Officer, in consultation with Solicitor Grover, thoroughly examined the files in the City's possession, custody, and control for records

---

[20] This Court may affirm the trial court on any basis that is clear. *Schenck*, 893 A.2d at 853. *See supra* n.16.

24

responsive to the Request, that inquiries with relevant City personnel and third-party contractors were made in determining whether any responsive records were in their possession, and that the City made a good faith effort in providing all responsive records, in addition to the supplemental information requested by OOR. *See* R.R. at 78a-79a.[21] The City also relied on a supplemental sworn affidavit of Solicitor Grover submitted to the trial court, which focused primarily on the donor exception and stated that the communications of the City and the Lavery law firm are "plainly and obviously" subject to the attorney-client and attorney work product privileges, that the Records Officer undertook a good faith review of its records, and that the Records Officer inquired with Requester twice as to whether he was satisfied with the records provided to him, but received no response. *See* R.R. at 420a-424a.[22]

---

[21] Specifically, the attestation states, in relevant part:

> 4. Upon receipt of the request, I have direct knowledge that the [Records Officer], in consultation with me, caused a thorough examination of files in the possession, custody and control of the Agency for records responsive to the request underlying the appeal.
>
> 5. Additionally, inquiries with relevant Agency personnel and, if applicable, relevant third party contractors, were made as to whether the requested records exist in their possession.
>
> 6. After conducting a good faith search of the Agency's files and inquiring with relevant Agency personnel, I understand that all public records within the Agency's possession, custody or control that are responsive to the request, along with supplemental information requested, were obtained and provided to the requester.

R.R. at 78a-79a.

[22] Specifically, the affidavit states, in pertinent part:

> 7. In response to separate [RTKL] requests from the McShane Firm and [Requester], the City provided a list of donors to the fund, with

25

As the trial court explained:

> "Public officials are presumed to have acted lawfully and in good faith until facts showing the contrary are averred, or in a proper case are averred and proved." We find no evidence in the record that any City official acted unlawfully or in bad faith. We accept [the Solicitor's] attestation as true, and conclude that the City has established that no other responsive record exists in its possession.

Trial Court 9/24/15 Memorandum Opinion at 3 (citation omitted). The trial court did not err in this regard in the absence of any competent evidence that the City acted

---

redacted names, addresses, and phone numbers of individual donors for the legal defense fund, but providing the amounts of the donations.

* * *

10. The communications of the Office of the City Solicitor and the Lavery law firm, as its outside legal counsel in the Act 192 litigation, plainly and obviously are subject to the attorney-client and attorney work product privileges.

13. The public records sought by [Requester] in relation to his [RTKL] request were provided after a good faith review of the City's records by our designated [Records] Officer, who works as a paralegal in the City's Law Bureau.

14. In the course of responding to the request of [Requester], our [Records] Officer twice inquired with [Requester] as to whether the records being provided satisfied his request and he received no response.

15. The City produced all public records deemed to be responsive by its [Records] Officer to [Requester]'s request and at no time attempted to deny him access to public records.

R.R. at 421a-422a.

26

in bad faith or that the enumerated records were in the City's possession at the time that the Request was submitted.[23] *See Pennsylvania Housing Finance Agency*, 43 A.3d at 536 ("OOR also correctly determined that [the agency] discharged its duty under the RTKL by releasing those documents relating to the restructuring of the Tasker Village mortgage and by attesting that corresponding records for the Chestnut/56th Street Apartments project do not exist.") (footnote omitted); *Moore v. Office of Open Records*, 992 A.2d 907, 909 (Pa. Cmwlth. 2010) ("The Department searched its records and submitted both sworn and unsworn affidavits that it was not in possession of [the requester's] judgment of sentence-that such a record does not currently exist. These statements are enough to satisfy the Department's burden of demonstrating the non-existence of the record in question, and obviously the Department cannot grant access to a record that does not exist.").[24] As a result, Requester's allegation of error in this regard is likewise without merit.

---

[23] Requester's reliance on documents provided by the City of Lancaster in response to a different RTKL request is irrelevant to our review of the City's response to the instant Request. *See Woods v. Office of Open Records*, 998 A.2d 665, 669 (Pa. Cmwlth. 2010) ("[T]he Board [of Probation and Parole maintains that it is irrelevant in the present case what the state of New York did or did not provide to [the requester]. What is relevant is whether this Court agrees with the OOR that the Board met its burden of proving that the [requested document] was exempt from public disclosure . . . . We agree."). *See also Germantown Cab Company v. Philadelphia Parking Authority*, (Pa. Cmwlth., No. 161 C.D. 2012, filed June 27, 2013), slip op. at 4 ("[The requester] contends that the records it received from the Parking Authority in this case cannot be reconciled with records that it received from the Parking Authority in other requests. Accordingly, the Parking Authority's response was not valid under the [RTKL]. In this respect, [the requester's] brief addresses another request, not the above-quoted request. Accordingly, it makes arguments not relevant to the instant request for public records.").

[24] *See also Germantown Cab Company*, slip op. at 5 ("The Parking Authority provided the notarized affidavit of [its open records officer] to establish that the Parking Authority provided all responsive records. The notarized affidavit of an agency's open records officer is sufficient evidence to show that all responsive records have been provided. As such, [OOR] properly denied [the requester's] appeal.") (citation omitted).

27

**IV.**

Requester's final claim is that the trial court erred in restricting his examination of the Solicitor at one of the trial court's hearings.[25]  Specifically, Requester contends that the trial court prevented him from asking the Solicitor "questions regarding what type of review of the file he had performed, his familiarity with the materials and how he concluded that no other records existed," "how the City set up the legal defense fund, why minutes or other documentation from a City council meeting were not included if it was part of the normal voting process, and the process that RTKL [Records Officer] utilized in reviewing the City's records." Brief of the Appellant at 26.  However, contrary to Requester's assertion, he specifically asked the trial court, "Am I to understand that I am not allowed to ask the solicitor about how he reviewed the records and then about any of the documents that were released in the [RTKL] request?" to which the court replied, "No.  You can ask that."  R.R. at 197b-198b.

With respect to the remaining matters that Requester was purportedly prevented from pursuing by the trial court, there is absolutely no indication in the record that he attempted to question the Solicitor in these areas, *see id.* at 189b-202b, and he fails to cite the portions of the record demonstrating that the trial court prevented him from doing so.  *See* Pa. R.A.P. 2119(c) ("If reference is made to the . . . evidence . . . or any other matter appearing in the record, the argument must set forth, in immediate connection therewith, or in a footnote thereto, the place in the

---

[25] *See* Pa. R.E. 611(a) ("The court should exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to:  (1)  make those procedures effective for determining the truth; (2) avoid wasting time; and (3) protect witnesses from harassment or undue embarrassment.").

record where the matter referred to appears[.]"); G. Ronald Darlington et al., 20A *West's Pennsylvania Appellate Practice* §2119:11 at 660 (2017-2018 ed.) ("It is not reasonable to expect the reviewing court to peruse the trial record, take note of each time there was an objection to evidence, and determine whether any of those instances warrant appellate relief. Counsel who expects the court to do so risks a finding of waiver. [*See Commonwealth v. Tielsch*, 934 A.2d 81, 93 (Pa. Super. 2007) (issues for which there was neither reference to record nor support from citation to authority were waived; judgment of sentence affirmed).]"). As a result, any claim of error in this regard is either meritless or has been waived.

## V.

Finally, the City has asked this Court to award attorneys' fees pursuant to Section 1304(b) of the RTKL, 65 P.S. §67.1304(b),[26] because it claims that Requester has raised arguments in bad faith, is being slanderous towards the donors, and has required the City to obtain outside counsel to avoid the appearance of impropriety. The trial court did not address this issue. However, because we conclude that the legal challenges presented in this matter are of arguable merit and not frivolous, the award of attorneys' fees is not warranted. *See, e.g.*, *Parsons v. Urban Redevelopment Authority*, 893 A.2d 164, 170 (Pa. Cmwlth. 2006), *appeal denied*, 916 A.2d 635 (Pa. 2007) (holding that the award of attorneys' fees was not warranted where the agency did not willfully or wantonly base its defense on an unreasonable interpretation of the law).

Accordingly, the trial court's order is affirmed.

---

[26] Section 1304(b) states, "[t]he court may award reasonable attorney fees and costs of litigation or an appropriate portion thereof to an agency . . . if the court finds that the legal challenge under this chapter was frivolous." 65 P.S. §67.1304(b).

29

MICHAEL H. WOJCIK, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Harrisburg     :
           :
    v.      : No. 1982 C.D. 2015
           :
Joshua Prince, Esq.,    :
           :
    Appellant :

**O R D E R**

AND NOW, this 10th day of May, 2018, the order of the Dauphin County Court of Common Pleas dated September 24, 2015, at No. 2015-CV-4163-MP is AFFIRMED.

            _____
            MICHAEL H. WOJCIK, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Harrisburg       :
      :
      v.       :    No. 1982 C.D. 2015
      :    Argued: June 7, 2017
Joshua Prince, Esq.,       :
      Appellant       :


BEFORE:     **HONORABLE MARY HANNAH LEAVITT,** President Judge
                **HONORABLE RENÉE COHN JUBELIRER,** Judge
                **HONORABLE ROBERT SIMPSON,** Judge
                **HONORABLE P. KEVIN BROBSON,** Judge
                **HONORABLE PATRICIA A. McCULLOUGH,** Judge
                **HONORABLE ANNE E. COVEY,** Judge
                **HONORABLE MICHAEL H. WOJCIK,** Judge


**DISSENTING OPINION BY**
**JUDGE COHN JUBELIRER**               **FILED: May 10, 2018**

       I respectfully dissent from the well-written Majority opinion because I cannot agree with its reasoning that a spreadsheet that lists check dates, check numbers, names, addresses, phone numbers, and the amounts of monetary contributions (Donor Spreadsheet), which the City of Harrisburg (City) receives, deposits into a City account, and then disburses to pay legal expenses, is not a "financial record" of the City under the Right-to-Know Law (RTKL).[1]

       Section 102 of the RTKL defines "financial record" as:

       (1)      [a]ny account, voucher or contract dealing with:

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104.

> (i)      the receipt or disbursement of funds by an agency; or
>
> (ii)     an agency's acquisition, use or disposal of services, supplies, materials, equipment or property.

65 P.S. § 67.102.  The Pennsylvania Supreme Court has broadly construed the term, as evidenced by the cases that the Majority cites.  For instance, in *Department of Public Welfare v. Eiseman*, the Supreme Court explained:

> the [RTKL] plainly reaches **more broadly** via its prescription that "financial records" encompass records "dealing with" disbursements of public money and services acquisitions by agencies.  *See* 65 P.S. § 67.102; *cf. N. Hills News Record v. Town of McCandless*, 722 A.2d 1037, 1039 (Pa. 1999) (explaining that language within the former open-record's law's definition of "public record"—which the Legislature reposited in the definition of "financial record" under the new [RTKL]—**reaches some range of records beyond accounts, vouchers, or contracts, subsuming records which "bear a sufficient connection" to such fiscally-related categories**).

125 A.3d 19, 29-30 (Pa. 2015) (emphasis added) (footnote omitted).  More recently, the Supreme Court stated "the term 'account' is to be broadly construed for the benefit of the public, encompassing, at minimum, the Commonwealth's financial records of debit and credit entries, as well as monetary receipts and disbursements." *Pa. State Univ. v. State Emps.' Ret. Bd.*, 935 A.2d 530, 534 (Pa. 2007); *see also LaValle v. Office of Gen. Counsel*, 769 A.2d 449, 456 (Pa. 2001) ("[T]he [RTKL] reaches some class of materials that are not facially accounts [or] vouchers . . . .").

Yet, the Majority concludes that the Donor Spreadsheet is "merely a collation of data with respect to the donors of private funds." *City of Harrisburg v. Prince*, __ A.3d __, __ (Pa. Cmwlth., No. 1982 C.D. 2015, filed May 10, 2018), slip op. at 15.  The Majority reasons that:

> [t]he private funds voluntarily donated to the City by check were not "received" by the City, and did not become agency funds for the purposes of the RTKL, until they were deposited into a City account, and the City's internal compilation of private donor information does not have a sufficiently close connection to such account to be considered a financial record under the RTKL. In short, records relating to the actual receipt and disbursement of the privately donated nongovernmental funds by the City into and from a City account are "financial records" for purposes of the RTKL; documents unrelated to the foregoing financial transactions are not "financial records" and are subject to exemption.

*Id.* In my opinion, there is no doubt that the funds here are received by the City. The Donor Spreadsheet clearly evidences the receipt of funds by the City from donors, which, in turn, are deposited by the City Treasury into a City bank account. The funds are accounted for in the City's General Ledger/accounting system and appropriated by City Council towards legal fees. (*See* City Response to Office of Open Records (OOR), Reproduced Record (R.R.) at 72a.) In short, the Donor Spreadsheet pertains to, and is an accounting of, the funds that were actually received by the City. As a result, I would conclude that the donor information contained within the Donor Spreadsheet is a "financial record" as defined in Section 102 of the RTKL.

Furthermore, I would conclude that the donor exception in Section 708(b)(13) of the RTKL does not preclude release of the records because the donor exception is not one of the exceptions that applies to financial records. Section 708(b)(13) provides, in relevant part:

> **(b) Exceptions.--**Except as provided in subsections (c) and (d), the following are exempt from access by a requester under this act:

> \* \* \*

(13) Records that would disclose the identity of an individual who lawfully makes a donation to an agency unless the donation is intended for or restricted to providing remuneration or personal tangible benefit to a named public official or employee of the agency, including lists of potential donors compiled by an agency to pursue donations, donor profile information or personal identifying information relating to a donor.

65 P.S. § 67.708(b)(13).

However, Section 708(c) provides, under the heading "Financial records" that "[t]he exceptions set forth in subsection (b) **shall not apply to financial records**, except that an agency may redact that portion of a financial record protected under subsection (b)(1), (2), (3), (4), (5), (6), (16) or (17)." 65 P.S. § 67.708(c) (emphasis added). Of importance, the donor exception found in subsection (b)(13) is **not** included. In *Eiseman*, our Supreme Court considered the interplay between Section 708(c) and another exemption found in Section 708(b) – the trade secrets and/or confidential proprietary information exception in Section 708(b)(11) of the RTKL, 65 P.S. § 67.708(b)(11). After concluding that the requested information – managed care organization rates – were "financial records," the Supreme Court found the exception in Section 708(b)(11) did not prevent their disclosure. Instead, the Supreme Court found that Section 708(c) was the operative section. *Eiseman*, 125 A.3d at 32. The Supreme Court went on to say that "if the General Assembly wished for dissemination to be withheld, it would have been a straightforward matter to provide for redaction of trade-secrets information in Section 708(c) of the [RTKL], as was done in relation to eight of the other openness exceptions which are otherwise withheld from financial records." *Id.* (citing 65 P.S. § 67.708(c) (withholding the exceptions in subsection (b)(1), (2), (3), (4), (5), (6), (16) or (17) from financial records)). Here, because the donor information is contained within a financial

record, and Section 708(c) does not list the donor exception as a basis for redaction, I would hold that the information would be subject to disclosure.

The Majority holds that even if the Donor Spreadsheet was a "financial record," the donor's names and addresses would still be subject to redaction because they constitute personal **financial** information, which is exempt from disclosure under Section 708(b)(6)(i)(A), 65 P.S. § 67.708(b)(6)(i)(A), and this exemption is listed in Section 708(c). Section 102 defines "personal financial information" as "[a]n individual's personal credit, charge or debit card information; bank account information; bank, credit or financial statements; account or PIN numbers and other information relating to an individual's personal finances." 65 P.S. § 67.102. It is the latter part of this definition – "other information relating to an individual's personal finances" – that the Majority relies upon to conclude the information sought here is "personal financial information." The Majority cites to *Department of Conservation and Natural Resources v. Office of Open Records*, 1 A.3d 929 (Pa. Cmwlth. 2010) (*DCNR*), for support of its overly broad interpretation of the term. In that case, at issue was disclosure of payroll records from third-party contractors that entered into contracts with the Commonwealth for public projects. The records contained the employees' names, Social Security numbers, home addresses, rates of pay, gross earnings, hours worked, deductions for taxes or benefits, and net pay amounts. We adopted the agency's reasoning that "[w]hen coupled with the other information in the payroll records concerning their wages and employment, the home addresses of employees constitute 'other information relating to an individual's personal finances.'" *Id.* at 942. Therefore, we concluded that the names and addresses were likewise personal financial information subject to redaction. *Id.*

RCJ-5

The Majority concludes that the Donor Spreadsheet at issue here includes personal financial information, such as donor names and addresses, similar to the *DCNR* case. However, unlike *DCNR*, here, the names and addresses of the donors are not "coupled with" other sensitive, private, financial information. Besides names and addresses, the Donor Spreadsheet contains check dates, check numbers, and amounts, which are more innocuous. This information does not disclose anything about an individual's personal finances, like someone's hourly rate, deduction, or net pay does. Without something more, I cannot conclude that the information in the Donor Spreadsheet is "personal financial information" subject to redaction.

For this reason, I would conclude that the Donor Spreadsheet is not necessarily protected from disclosure, but, because names and addresses of donors are requested, an additional analysis under *Pennsylvania State Education Association ex rel. Wilson v. Department of Community and Economic Development* 148 A.3d 142 (Pa. 2016) (*PSEA III*), is required to balance the individual donors' right of privacy against the public's interest in disclosure. Because the record was developed before the Supreme Court enunciated the balancing test in *PSEA III*, I would remand to the Court of Common Pleas of Dauphin County (common pleas) so that a record can be developed that will allow for the donors' right to privacy to be balanced against the public's right to know.[2] If the information requested is protected by the donors' right to privacy, it should not be disclosed. But, otherwise, we should not judicially expand an exception to the RTKL, which has the goal of

---

[2] Upon remand, I would also direct common pleas to address whether the City produced all records responsive to the RTKL request because the sworn attestation submitted to OOR contains no specifics about which City files were examined, how the search for responsive records was conducted, or with whom the solicitor or records office inquired in their search for responsive documents.

ensuring transparency in government, particularly where financial information of a government agency is involved.

In conclusion, the Majority opinion has the effect of both narrowing the meaning of financial record while expanding the donor exception although we have held that "exemptions from disclosure must be narrowly construed." *Bowling v. Office of Open Records*, 990 A.2d 813, 824 (Pa. Cmwlth. 2010), *aff'd by* 75 A.3d 453 (Pa. 2013). This is because "the [RTKL] is remedial legislation designed to promote access to official government information in order to prohibit secrets, scrutinize the actions of public officials, and make public officials accountable for their actions." *Id.* The Majority opinion constrains the public's ability to see the source of public funds. For these reasons, respectfully, I would reverse the September 24, 2015 Order and remand to common pleas for further proceedings.

_____
**RENÉE COHN JUBELIRER,** Judge

Judge McCullough joins in this dissenting opinion.