# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Harrisburg          :

         :

      v.          :   No. 1228 C.D. 2021

         :   Argued: September 12, 2022

Joshua Prince, Esq.,          :

         :

         Appellant      :

**BEFORE:**     **HONORABLE RENÉE COHN JUBELIRER,** President Judge
              **HONORABLE PATRICIA A. McCULLOUGH,** Judge
              **HONORABLE BONNIE BRIGANCE LEADBETTER,** Senior Judge

**OPINION BY**
**PRESIDENT JUDGE COHN JUBELIRER**         **FILED: January 3, 2023**

This case returns to us following remand after the Supreme Court reversed this Court's en banc decision in *City of Harrisburg v. Prince*, 186 A.3d 544, 548 (Pa. Cmwlth. 2018) (en banc) (*Prince I*), *reversed*, 219 A.3d 602 (Pa. 2019) (*Prince II*). Joshua Prince, Esq. (Appellant) had filed a Right-to-Know Law[1] (RTKL) Request directed toward the City of Harrisburg (City), which sought the names, home addresses, check numbers, and telephone numbers of individuals who contributed to the City Legal Defense Fund (Fund). The purpose of the Fund was to collect donations to help the City pay its insurance deductible and defend its firearm ordinances against legal challenges to the ordinances' validity. After remand, the Court of Common Pleas of Dauphin County (common pleas) granted the Objection of John Doe 1 and Jane Doe 1, Objection of John Doe 2, and Objection of John Doe 3 (Objections), ordering the City to disclose "[a]s to each donor on the subject spreadsheet, . . . whether the donor [including Objectors] lives in the City of Harrisburg, Dauphin County, and/or the Commonwealth of Pennsylvania,"

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104.

concluding that the privacy interests of John Doe 1 and Jane Doe 1, John Doe 2, and John Doe 3 (Objectors) outweighed the public interest asserted by Appellant. (Common Pleas Order at 2, Reproduced Record (R.R.) at 220a.)

Appellant appeals from common pleas' order, arguing that common pleas erred because when applying the balancing test articulated by our Supreme Court in *Pennsylvania State Education Association v. Department of Community and Economic Development*, 148 A.3d 142 (Pa. 2016) (*PSEA*), Objectors' privacy interest in their names and home addresses does not outweigh the public's interest in knowing who is contributing to funding a specific course of government action through their donations.[2] Also before us are Objectors' Application for Relief in Nature of Motion to Quash Appeal (Application to Quash) and the City's Motion to Quash (together, Motions). Because we determine that Appellant's appeal was timely and that common pleas properly applied the *PSEA* balancing test in concluding that Objectors' privacy interest in their personal information, primarily their names and home addresses, outweighs the public interest in disclosure, we deny the Motions and affirm common pleas' Order.

## I. BACKGROUND

In *Prince I*, this Court affirmed a decision from common pleas holding that the donor spreadsheet, containing the information sought by Appellant,[3] was not a financial record, and, therefore, Section 708(b)(13) of the RTKL, 65 P.S.

---

[2] Before us, Appellant is requesting the disclosure of the names and home addresses of all donors to the Fund, including Objectors. As Objectors filed the Objections, we will focus on weighing Objectors' privacy interest in their names and home addresses against Appellant's stated public interest in disclosure of such information.

[3] Appellant sought in his February 25, 2015, RTKL request the names, home addresses, check numbers, and telephone numbers of individuals who donated to the Fund.

§ 67.708(b)(13)[4] (donor exception), applied to protect information about the donors, including their names and addresses. *Prince I*, 186 A.3d at 548. Appellant appealed to the Supreme Court, which reversed. The Court stated that, "although records that would disclose the identity of individual donors are generally exempted from disclosure under the RTKL, if those records may be characterized as financial records," access is required. Ultimately, the Court concluded that the donor spreadsheet was a financial record rendering Section 708(b)(13) inapplicable. The Court remanded the matter so that the *PSEA* balancing test could be performed to determine whether any of the donors' personal information was protected by article I, section 1 of the Pennsylvania Constitution, PA. CONST. art. I, § 1.[5] *Prince II*, 219 A.3d at 605. This Court remanded the matter to common pleas to require the City to notify the third-party donors of the potential disclosure of their information and their right to participate in the proceedings, and for common pleas to conduct the *PSEA* balancing test as ordered by the Supreme Court.

---

[4] Section 708(b)(13) states:

**(b) Exceptions.--**Except as provided in subsections (c) and (d), the following are exempt from access by a requester under this act:
. . . .

(13) Records that would disclose the identity of an individual who lawfully makes a donation to an agency unless the donation is intended for or restricted to providing remuneration or personal tangible benefit to a named public official or employee of the agency, including lists of potential donors compiled by an agency to pursue donations, donor profile information or personal identifying information relating to a donor.

65 P.S. § 67.708(b)(13).

[5] "All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness." PA. CONST. art. I, § 1.

The City provided notice to the third-party donors, and Objectors filed Objections to the public disclosure of their names, home addresses, check numbers, and telephone numbers. Therein, Objectors averred that disclosure of their personal information had the potential to harm their privacy, safety, and reputational interests and that there was no public interest served by the disclosure of their personal information. Based on the nature of the claims and need to remain anonymous, Objectors' counsel verified the facts supporting the potential harm to which Objectors would be exposed if their personal information was disclosed to the public. Objectors attached documentary evidence to support their position, including an internet blog authored by Appellant in which he asserts that the donors to the Fund were committing crimes, and news clippings and criminal court filings reflecting the current state of the political environment, particularly around the issue of gun control. (Exhibits (Exs.) A-C to Objections of John Doe 1 and Jane Doe 1, R.R. at 27a, 32a, 36a.)[6]

In response to the Objections, Appellant filed an Answer, asserting that he was without sufficient information and knowledge to form a belief about the truth of Objectors' allegations based on the absence of verifications signed by Objectors' themselves. (Appellant's Answer to Objections ¶¶ 4-5, 14, 30-32, 35, 37-44, 47-49, 51, R.R. at 98a-100a, 102a-06a.) The City filed a Brief in Support of the Objections, arguing, in essence, that because Objectors have a privacy right in their personal information, and that privacy right outweighs the public's interest in disclosure, common pleas should sustain the Objections. (*See* City's Brief (Br.) in Support of Objections, R.R. at 141a.)

---

[6] Exhibits A-C are identical for the Objections filed by John Doe 2 and John Doe 3.

Common pleas heard oral argument on the Objections on September 20, 2021. At oral argument, the following exchange occurred between Appellant's counsel and common pleas:

> Appellant's Counsel: And so the public interest that we've articulated, or tried to articulate anyway, is that we believe the public has an interest in knowing who is supporting the City's defense fund and, you know, whether or not -- particularly whether or not those individuals reside in Pennsylvania and the City of Harrisburg.
>
> THE COURT: Well, okay. That's interesting. What if the City provided generally where they live, whether they're a city resident, a resident of Dauphin County, a resident of Pennsylvania, or a resident of Cumberland County? What if the City provided a general area where the donors lived?
>
> Appellant's Counsel: And I think to that point, Your Honor, we had expressed in our briefing that perhaps as an alternative we are willing to split that proverbial baby, that would be something that's acceptable that we would feel would meet that public interest inasmuch as it tells us the general area that person's from.
>
> I would -- I would kind of push Your Honor towards at least the city and the state; however, if Your Honor felt that that perhaps was too much and a more general at least county in the state, I think that might be something that would be acceptable for the public and that public interest of seeing where that money is coming from, in state and out of state.

(Transcript of Oral Argument at 3-4, R.R. at 191a-92a.) On September 30, 2021, common pleas granted the Objections stating:

> In the instant matter, the public interest identified by [Appellant] is the public's interest in knowing whether the individuals who contributed to the City's legal defense fund reside in the City or if non-residents of the Commonwealth are attempting to influence Pennsylvania politics. [Appellant's] counsel agrees that this public interest may be served by providing less private information for each of the donors, such as a general indication as to whether each donor resides in the City of Harrisburg, Dauphin County, and/or the State of Pennsylvania.

5

> Since [Appellant's] counsel agrees that the actual names, addresses, and phone numbers of the donors is not necessary to accomplish the stated public purpose, we hereby GRANT the Objections . . . . Furthermore, we find that [the City] should provide the following information to [Appellant] . . . : As to each donor on the subject spreadsheet, [the City] should indicate whether the donor lives in the City of Harrisburg, Dauphin County, and/or the Commonwealth of Pennsylvania. No other information needs to be produced.

(Common Pleas Order at 2.) Citing common pleas' reliance on the alleged agreement of counsel, Appellant submitted an Emergency Motion for Reconsideration (Emergency Motion) asserting that his counsel "had no recollection of agreeing to such, nor [had] permission to agree to such from [Appellant]." (R.R. at 216a.) Appellant further asserted that the transcript of the hearing "does not show where the request to reveal the names of the donors to the Fund was waived or otherwise agreed to as unnecessary." (*Id.* at 217a.) Alternatively, Appellant argued that even assuming *arguendo* that the exchange between common pleas and his counsel was an agreement, it "was not his [counsel's] understanding during the hearing that he was agreeing to the non-disclosure of the names, as [he] never specifically stated such and [Appellant] never agreed or authorized him to take such a position." (*Id.* at 217a-18a.) Common pleas denied the Emergency Motion on October 27, 2021, stating the court "would have granted the Objections even without [the] statement from [Appellant]'s counsel" because "[Appellant] did not provide any evidence that knowledge of the names, addresses, and phone numbers of the subject donors was necessary to accomplish the stated public purpose." (Common Pleas' Supplemental (Suppl.) Order at 1.) To comply with common pleas Order, the City disclosed the city and state of the donors' home addresses, including Objectors, which it is undisputed revealed that they all resided within Central Pennsylvania.

6

It is from common pleas' September 30, 2021 Order that Appellant appeals to this Court.[7]

## II. TIMELINESS OF APPEAL

On January 28, 2022, Objectors filed their Application to Quash, and the City filed its Motion to Quash on February 11, 2022, both asserting that Appellant's appeal was not timely filed with common pleas. By way of our February 17, 2022 Order, the Motions were assigned for disposition along with the merits of the appeal. As it is a threshold issue, we address first whether Appellant's appeal was timely.

Objectors and the City assert that Appellant's appeal is untimely because it was filed more than 30 days after the entry of common pleas' September 30, 2021 Order, and, because Appellant's Motion for Reconsideration was denied by common pleas in its October 27, 2021 Supplemental Order, the 30-day deadline set forth in Pennsylvania Rule of Appellate Procedure 903(a), Pa.R.A.P. 903(a), was not extended. (Motion to Quash at 2; Objectors' Br. at 24-25.) Objectors further assert that there was no breakdown in the administrative process that would justify nunc pro tunc relief because it was Appellant's "own negligence" in addressing his appeal to the improper official that resulted in the docketing delay. (Objectors' Br. at 25.)

Appellant responds that his appeal was timely as evidenced by the FedEx proof-of-delivery document he has submitted to this Court and that the clerk's failure to time stamp his appeal when it was received "should not be held against him." (Appellant's Br. at 8, 17.) Alternatively, Appellant requests that we accept the

---

[7] When reviewing an order of a trial court regarding the RTKL, we must determine whether the "findings of fact are supported by competent evidence or whether the trial court committed an error of law[] or an abuse of discretion in reaching its decision." *Borough of Pottstown v. Suber-Aponte*, 202 A.3d 173, 178 n.8 (Pa. Cmwlth. 2019) (internal quotations and citations omitted).

appeal nunc pro tunc because it would have been timely filed "but for a breakdown in the court system." (*Id.* at 8.)

Pursuant to Rule 903(a), an appeal must be filed within 30 days of a final order to be timely. Appellant appeals from the September 30, 2021 Order of common pleas granting the Objections. We note that the Supplemental Order issued by common pleas on October 27, 2021, denying Appellant's Emergency Motion, does not affect the applicable timeframe during which Appellant could timely take an appeal. *See Brown v. Greene Cnty. Off. of Dist. Att'y*, 255 A.3d 673, 675 n.3 (Pa. Cmwlth. 2021) (holding that "[a] party's filing of a motion for reconsideration . . . does not stay the appeal period; the appeal period is only tolled where the trial court expressly grants the request for reconsideration" (internal quotations omitted)). Thus, for Appellant's appeal to be timely, he had to have filed his appeal with the Dauphin County Prothonotary (Prothonotary) by November 1, 2021.[8]

Objectors posit that the Prothonotary did not receive Appellant's appeal until November 3, 2021, at 11:14 a.m., the time stamped on the appeal, and that pursuant to Rule 905(3), this date constitutes "the date when the appeal was taken." Pa.R.A.P. 905(3). We recognize that the timestamp on the Notice of Appeal reflects receipt on November 3, 2021, which would otherwise make Appellant's appeal untimely. However, we conclude, based on the evidence provided by Appellant, that the appeal

---

[8] Although 30 days from September 30, 2021, is October 30, 2021, that day was a Saturday. Pursuant to Section 1908 of the Statutory Construction Act of 1972, "[w]henever the last day of any such period shall fall on Saturday or Sunday, . . . such day shall be omitted from the computation." 1 Pa.C.S. § 1908. *See* Pennsylvania Rule of Appellate Procedure 107, Pa.R.A.P. 107 (providing that, unless inconsistent with any express provision of the appellate rules, the rules of construction set forth in "Chapter 19 of Title 1 of the *Pennsylvania Consolidated Statutes*" apply in interpreting the appellate rules). Because October 30 and 31, 2021, were Saturday and Sunday, respectively, Appellant had until November 1, 2021, to timely file his Notice of Appeal.

8

was received by the Prothonotary on November 1, 2021, at 8:41 a.m., and thus was timely.

Appellant has provided a copy of a proof-of-delivery document from FedEx. (R.R. at 244a-45a, Ex. A to Appellant's Answer to the Application to Quash.) This document evidences that Appellant mailed his appeal, via FedEx Standard Overnight service, on October 29, 2021, addressed it to the Prothonotary, that it was received on November 1, 2021, at 8:41 a.m., and signed for by "T. Bixler." *Id.* Rule 905(3) provides that, "[u]pon receipt of the notice of appeal, the clerk shall **immediately** stamp it with the date of receipt." Pa.R.A.P. 905(3) (emphasis added). For some reason, Appellant's appeal was not timestamped until two days after it was apparently received by the Prothonotary's office. Objectors suggest that this discrepancy is because Appellant "negligently" sent his appeal to common pleas via FedEx Express, but to the Prothonotary via United States Mail, and that Pennsylvania Rule of Appellate Procedure 902, Pa.R.A.P. 902, requires that the notice of appeal be filed "with the clerk of the lower court." However, this argument is not convincing.

In *Commonwealth v. Williams*, 106 A.3d 583, 589 (Pa. 2014), our Supreme Court determined that the appellant filed a timely notice of appeal, despite the time stamped on the notice of appeal. The Supreme Court explained that "[r]ather than requiring the [appellant] to first refile an amended notice of appeal, the Clerk should have time-stamped the [appellant's] timely notice of appeal . . . , even assuming it was defective, and then informed the [appellant] of the errors identified in the filing." *Id.* at 589-90. The Court further reasoned that its knowledge that the appellant timely filed the notice of appeal within the applicable 30-day deadline was "sufficient to

9

resolve the jurisdictional question presented by [the a]ppellee's [m]otion to [q]uash." *Id.* at 590.

In this case, while it is unclear why the Prothonotary's office did not time stamp Appellant's appeal on the date that it was received, the FedEx receipt attached as Exhibit A to Appellant's Answer to the Motion to Quash shows it was addressed to the "Prothonotary of Dauphin County," was delivered on November 1, 2021, at 8:41a.m., and signed by "T. Bixler." Like in *Williams*, the documentary evidence submitted by Appellant here is sufficient to resolve the jurisdictional question in this case. Accordingly, we deny the Motions.[9]

## III.    THE MERITS

Appellant argues that common pleas erred in granting the Objections and directing the City to only release generalized information about donors' residences because Objectors' privacy interest in their personal information is outweighed by the public interest "in identifying who is contributing to funding a specific course of government action." (Appellant's Br. at 7.) Appellant compares the donors' donations to the Fund to donations made to political committees and campaigns, and asserts that state and federal law, and Pennsylvania Supreme Court precedent, have found "the public interest in government transparency has outweighed the privacy

---

[9] Assuming, *arguendo*, that Appellant's appeal was untimely filed, we would nonetheless allow the appeal nunc pro tunc. "A nunc pro tunc appeal may be allowed where extraordinary circumstances involving . . . some breakdown in the administrative process caused the delay in filing, or where non-negligent circumstances related to the appellant, his . . . counsel[,] or a third party caused the delay." *J.A. v. Dep't of Pub. Welfare*, 873 A.2d 782, 785 (Pa. Cmwlth. 2005) (citing *Cook v. Unemployment Comp. Bd. of Rev.*, 671 A.2d 1130 (Pa. 1996)). As previously noted, it is unclear why the appeal was not timestamped on the date that it was received in the Prothonotary's office, as evidenced by the FedEx document. These circumstances evidence that the delay in the filing of the appeal was the result of some breakdown in the administrative process, not negligence by Appellant or his counsel.

interest in relation to similar financial records." (*Id.*) Appellant also argues that common pleas abused its discretion, committed errors of law, and violated Appellant's constitutional rights "by failing to verify the putative claims and allegations made by [Objectors] in their Objections[][,] and failing to give Appellant any opportunity to investigate or challenge any of the claims which were used to purportedly favor the privacy interest." (*Id.* at 7-8 (footnote omitted).)

Appellees assert common pleas' Order should be affirmed because the court properly applied the *PSEA* balancing test and there was no error in the court's determination that Objectors' privacy interest in their personal information outweighs the public's interest in disclosure. Appellees also contend that at the time Objectors made their donations, they had a reasonable expectation of privacy that their personal information would be exempt from disclosure pursuant to the donor exception. 65 P.S. § 67.708(b)(13). (Objectors' Br. at 13-14; City's Br. at 14.)

The City maintains the information that has already been disclosed to Appellant – the date of the donation, the donation amount, and the city and state of the donors' home address – serves Appellant's stated public interest in identifying who is contributing to the Fund, namely whether donors are citizens of the Commonwealth, non-citizens, or otherwise out-of-state advocacy groups. (City's Br. at 8.) Further, the City contends that Appellant had no right to an evidentiary hearing prior to common pleas' granting of the Objections, and as such, common pleas did not err in not having a hearing. (*Id.*)

Objectors posit that "[a]fter [Appellant] discovered that all donors reside in [C]entral Pennsylvania, he sought reconsideration under a new theory that identities of persons who donate money to government agencies are public regardless of where they live." (Objectors' Br. at 10.) Further, Objectors assert they provided

11

documentary evidence to support their assertion that there is a strong interest in non-disclosure of their personal information because they are likely to suffer harm to their reputation and personal security if the public knows their identities and full addresses. (*Id.*) Lastly, Objectors request that Appellant be sanctioned for his "frivolous" appeal and attorneys' fees be awarded, citing Section 1304(b) of the RTKL, 65 P.S. § 67.1304(b), and Section 2503(9) of the Judicial Code, 42 Pa.C.S. § 2503(9). (*Id.* at 24.)

## IV. ANALYSIS

We recognize that "the objective of the [RTKL] . . . is to empower citizens by affording them access to information concerning the activities of their government." *SWB Yankees LLC v. Wintermantel*, 45 A.3d 1029, 1042 (Pa. 2012). We must "liberally construe the RTKL to effectuate its purpose of promoting 'access to official government information in order to prohibit secrets, scrutinize actions of public officials, and make public officials accountable for their actions.'"[10] *Levy v. Senate of Pa.*, 65 A.3d 361, 381 (Pa. 2013) (quoting *Allegheny Cnty. Dep't of Admin. Servs. v. A Second Chance, Inc.*, 13 A.3d 1025, 1034 (Pa. Cmwlth. 2011)). However, our Supreme Court has held that certain types of personal information, including home addresses, implicate "the right to privacy under article I, section 1 of the Pennsylvania Constitution, and thus require[] a balancing to determine whether the right to privacy outweighs the public's interest in dissemination" before the information may be disclosed under the RTKL. *PSEA*, 148 A.3d at 144 (citing *Sapp*

---

[10] Under Section 305(a) of the RTKL, a Commonwealth or local agency's records are presumed public. 65 P.S. § 67.305(a). The burden is on the agency or party seeking to prevent disclosure to prove, by a preponderance of the evidence, that an exception applies. *See* 65 P.S. § 67.708(a)(1). A preponderance of the evidence is defined as "such proof as leads the fact-finder . . . to find that the existence of a contested fact is more probable than its nonexistence." *Pa. State Troopers Ass'n v. Scolforo*, 18 A.3d 435, 439 (Pa. Cmwlth. 2011).

*Roofing Co. v. Sheet Metal Workers' Int'l Ass'n, Loc. Union No. 12*, 713 A.2d 627 (Pa. 1998) (plurality); *Tribune-Rev. Publ'g Co. v. Bodack*, 961 A.2d 110 (Pa. 2008)). This is because "citizens of this Commonwealth . . . have a right to informational privacy, namely the right of an individual to control access to, and dissemination of, personal information about himself or herself." *Reese v. Pennsylvanians for Union Reform*, 173 A.3d 1143, 1159 (Pa. 2017).

With these principles in mind, we turn to the issues presented.

### A. PSEA Balancing Test

Appellant asserts the public has an interest in knowing who is contributing to private government funding, and whether individuals or advocacy groups outside of Pennsylvania are contributing to the Fund. Appellees respond that Objectors have a privacy interest in their personal information, including their names and home addresses, that outweighs the public interest asserted by Appellant. (Objectors' Br. at 11, 14, 17; City's Br. at 12, 16.) Weighing Objectors' privacy interest in their personal information against the public's interest in disclosure of the information, common pleas determined that the former outweighed the latter, which Appellant argues was in error.

At the outset, we reiterate that the objective of the RTKL is "to empower citizens by affording them access to information concerning the activities of their government." *SWB Yankees LLC*, 45 A.3d at 1042. "The RTKL . . . 'is designed to promote access to official government information in order to prohibit secrets, scrutinize the actions of public officials, and make public officials accountable for their actions.'" *Pa. Dep't of Educ. v. Bagwell*, 131 A.3d 638, 646 (Pa. Cmwlth. 2015). The RTKL affords greater access to public records than did the prior Right-

13

to-Know Act (RTKA),[11] resulting in "a dramatic expansion of the public's access to government documents." *Levy*, 65 A.3d at 381. Thus, we agree with common pleas and Appellant that there exists a public interest in disclosure of the requested records, and that, pursuant to the RTKL, Appellant would be entitled to the release of the requested records.

However, the inquiry does not end here. The mere existence of a public interest in disclosure, and a "green light" pursuant to the RTKL, does not immediately result in disclosure of the requested records. Instead, as recognized by our Supreme Court, the Pennsylvania Constitution requires that a balancing test be performed that weighs the public interest and privacy interests at issue, *Prince II*, 219 A.3d at 605, which common pleas performed as directed. Ultimately, common pleas determined that Objectors' privacy interests in their names and home addresses outweighed the public's interest in disclosure. Common pleas ordered that the City disclose to Appellant only "whether the donor lives in the City of Harrisburg, Dauphin County, and/or the Commonwealth of Pennsylvania." (Common Pleas Order at 2.) The instant appeal followed. Our task on appeal is not to perform our own balancing of interests but to determine whether common pleas erred in its performance of the *PSEA* balancing test. We discern no error by common pleas.

The *PSEA* balancing test is not a statutory, but rather a constitutional, requirement and is required even in the absence of any statutory requirement. *Prince II*, 219 A.3d at 605 (citing *PSEA*, 148 A.3d at 156). As such the *PSEA* balancing test is applicable to all government disclosure of personal information, including those not mandated by the RTKL or another statute. *Id.* Our Supreme Court's decisions in *Sapp Roofing*, *Pennsylvania State University v. State Employees'*

---

[11] Act of June 21, 1957, P.L. 390, *as amended*, 65 P.S. §§ 66.1-66.9, repealed by Section 3 of the Act of February 14, 2008, P.L. 6.

14

*Retirement Board*, 935 A.2d 530, 538 (Pa. 2007) (*Penn State*), and *Bodack* have "developed a body of case law requiring governmental agencies to respect the constitutional privacy rights of citizens when disseminating requested information." *PSEA*, 148 A.3d at 156. "In such circumstances, a balancing test is required before the disclosure of any personal information." *Id.*

"'[C]ertain types of information,' including home addresses, by their very nature, implicate privacy concerns and require balancing." *Id.* at 156-57 (quoting *Bodack*, 961 A.2d at 115-16). "While the goal of the legislature to make more, rather than less, information available to public scrutiny is laudable, the constitutional rights of the citizens of this Commonwealth to be left alone remains a significant countervailing force." *Id.* at 158. In applying this balancing test, "the appropriate question is whether the records requested would **potentially** impair the reputation or personal security of another, and whether that **potential** impairment outweighs the public interest in the dissemination of the records at issue." *Bodack*, 961 A.2d at 115 (citing *Penn State*, 935 A.2d at 538) (emphasis in original). We begin our analysis by addressing the first prong of the *PSEA* balancing test, and whether common pleas erred in determining that Objectors had privacy interests in their names and home addresses that would have to be weighed against the public's interest in disclosure.

Objectors maintain that they have both individualized and generalized concerns about the harm disclosure of their personal information would cause to their reputations and personal security. Jane Doe 1 asserts that she is a general practice physician, and that if her personal information is disclosed, she may suffer harm to her business reputation. (Objectors' Br. at 16; Objection of John Doe 1 and Jane Doe 1 ¶ 42, R.R. at 20a.) John Doe 2 asserts that he is over 85 years old, making

15

him more susceptible to criminal victimization. (Objectors' Br. at 16-17; Objection of John Doe 2 ¶ 41, R.R. at 76a.) The spouse of John Doe 3 had no knowledge that her husband made a donation, nor did she consent to him making the donation. (Objectors' Br. at 17; Objection of John Doe 3 ¶ 32, R.R. at 89a.) However, because John Doe 3 used a joint marital checking account, his spouse's personal information would be subject to disclosure. (*Id.*)

Apart from Objectors' individualized concerns, they assert they have generalized concerns regarding disclosure of their personal information. Objectors assert "[t]he current political environment makes it reasonably likely that disclosure of [their] personal information will be 'intrinsically harmful' and result in a substantial and demonstrable risk of physical harm to [them] and their personal security." (Objectors' Br. at 16.) Whether disclosure of Objectors' personal information would be intrinsically harmful to Objectors is a factor that can be considered when conducting the balancing test, but not the sole factor. *Penn State*, 935 A.2d at 541.

Objectors attached to their Objections documents, including an internet blog authored by Appellant, and news articles and court filings, evidencing the current state of the political environment involving gun rights. In Appellant's internet blog titled "Is the City of Harrisburg Attempting to Solicit People to Conspire to Violate the Law[,]" he writes that the firearm and ammunition ordinances are "illegal" and "unlawful," that the City was "attempting to solicit people to conspire to violate [the law,]" that "there can be no dispute . . . the City . . . and its elected officials have violated [the law,]" and that "anyone donating in support would likewise be attempting and conspiring to violate [the law.]" (R.R. at 26a-30a, Ex. A to Objection

16

of John Doe 1 and Jane Doe 1.)[12] Appellant "call[ed] upon [the District Attorney] to bring charges against all of those involved," which would include donors who donated to the Fund. (*Id.*) Objectors also submitted news articles regarding an anti-gun rally that was planned to be held in Richmond, Virginia, in January 2020, but, as a result of threats of violence, was cancelled. In Appellant's brief, he recognizes the "controversial course of government action" relating to the defense of the City's firearm ordinances, but discounts Objectors' concerns asserting they have not provided any support for their allegations that their reputations and personal security **will be** harmed if their personal information is disclosed. (Appellant's Br. at 11.)

However, the proper inquiry does not require establishing absolute harm, but rather establishing only the **potential** of harm to the reputation or personal security of another. *Bodack*, 961 A.2d at 115. Common pleas weighed Objectors' submissions and concluded that Objectors presented sufficient evidence to establish that such potential harm exists if their names and home addresses are disclosed to the public.[13] Mindful of common pleas' role as factfinder, *Allegheny County District Attorney's Office v. Wereschagin*, 257 A.3d 1280, 1297 (Pa. Cmwlth. 2021), and that the burden of proof in a RTKL matter is by a preponderance of the evidence, which is a more likely than not inquiry, *Borough of Pottstown v. Suber-Aponte*, 202 A.3d 173, 180 n.11 (Pa. Cmwlth. 2019), we discern no error in common pleas concluding, essentially, that Objectors established that it was more likely than not

---

[12] We note that Exhibit A attached to Objection of John Doe 1 and Jane Doe 1 is identical to Exhibit A attached to Objection of John Doe 2, and Objection of John Doe 3.

[13] Objectors also cite to Section 708(b)(1)(ii) and our decision in *Crocco v. Pennsylvania Department of Health*, 214 A.3d 316 (Pa. Cmwlth. 2019), and assert that their personal information is exempt from disclosure under the personal security exemption of the RTKL. However, we do not reach this issue based on our conclusion that common pleas properly applied the *PSEA* balancing test to determine that Objectors' privacy interest in their personal information outweighs the public's interest in disclosure.

17

that there was a potential harm to their reputation and personal security if their names and home addresses were disclosed.

With the public's interest in disclosure and Objectors' privacy interests in their names and home addresses established, we turn to common pleas' application of the next prong of the test – which is to weigh those interests. Appellant argues common pleas erred because Objectors' privacy interest in their names and home addresses is not greater than the public's interest in knowing who is contributing to private funding of government action. (Appellant's Br. at 9.) We address each of Appellant's corresponding arguments below.

Appellant asserts that, throughout this litigation, he has maintained his request for the names and home addresses of the donors to the Fund, including Objectors, and that common pleas erred in stating in its order that he "did not provide any evidence that knowledge of the names [and] addresses. . . of the [Objectors] was necessary to accomplish the stated public purpose." (Appellant's Br. at 13.) However, we agree with common pleas, and note Appellant's broad assertion that the public has the right to know who is contributing to the Fund, without more, does little to tilt the scales of the *PSEA* balancing test in favor of disclosure of the requested information. This is especially the case in light of the information the City has already disclosed to Appellant, and the primary concern identified in Appellant's filings and representations to the courts that the public has an interest in knowing whether the donations came from within the Commonwealth.

Appellant next cites to state and federal campaign finance laws, which require disclosure of campaign donors' information to the public, in support of his position that the public's interest in knowing Objectors' names and full addresses outweighs Objectors' privacy interest in their personal information. Appellant asserts that "the

18

interest in dissemination of the information [here] is even greater than that of a donation to a political campaign or candidate committee, as here, the City has solicited public funds for the purpose of supporting a specific and controversial course of government action." (Appellant's Br. at 11.)

Objectors respond that campaign finance laws support non-disclosure of their personal information because, unlike campaign contributions which are statutorily required to be disclosed, Objectors had a reasonable expectation of privacy that their information would be exempt from disclosure pursuant to Section 708(b)(13) of the RTKL, otherwise known as the donor exception. (Objectors' Br. at 20.) In other words, there is no statute that expressly compels disclosure of the personal information of individuals, like Objectors, and thus, it was not unreasonable for Objectors to believe their personal information was exempt from disclosure pursuant to the donor exception of the RTKL. The City relatedly asserts that Appellant's argument that "the City solicited public funds for the purpose of supporting a specific and controversial course of government action" is false and misrepresents what occurred. (City's Br. at 19.) Rather, the City was "defending the constitutionality of its legislation," which was passed by its "democratically elected legislative branch," and that this is "not controversial, but good governance." (*Id.*)

"Campaign reporting requirements exist to ensure a fair election and to advise the electorate of the manner in which campaign money is spent." *Pennsylvanians for Union Reform v. Pa. Off. of Admin.*, 129 A.3d 1246, 1262 n.22 (Pa. Cmwlth. 2015) We noted in *Pennsylvanians for Union Reform* that "[t]he importance of campaign reporting requirements is obvious: by preserving public access to the manner in which campaign money is received and spent, public confidence in the election process is maintained." *Id.* Here, Objectors' donations to the Fund do not call into

19

question the fairness of the City's decision-making process relative to the enactment of the firearm ordinances, as the ordinances had already been enacted. Moreover, the manner in which Objectors' donations were spent was disclosed well before Appellant's RTKL Request. In requesting the public's assistance, the City advertised it was looking for donations to help it pay a $250,000 insurance premium to defend against legal challenges to its firearm ordinances. As such, we are not persuaded by Appellant's argument that common pleas erred in its balancing because campaign reporting requirements do not support Appellant's assertion that the public's interest in disclosure outweighs Objectors' privacy interest in their personal information.

Appellant next argues that the public interest in the instant case is greater than the one identified in *Penn State*, which was "know[ing] the identities of individuals receiving, or standing to receive, Commonwealth funds and the specific basis therefor," 935 A.2d at 539, where, here, the public interest relates to "the source of money flowing **into** government agencies from individuals." (Appellant's Br. at 12 (emphasis in original).) Appellant also argues that Objectors "avail[ed] themselves of the political and legal process" by making their donations because they "were not required or compelled to make donations in any way." (*Id.*) As such, Appellant maintains that, under *Penn State*, Objectors "have subjected themselves to the scrutiny of the public as provided by the RTKL." (*Id.*) The City responds that Objectors, by way of their donations, did not "willingly or knowingly expose their personal information to the public domain," pointing out that it was reasonable to believe that their personal information would not be disclosed pursuant to the RTKL's donor exception. (City's Br. at 14-15.)

20

In *Penn State*, the Court considered both subjective and objective elements in evaluating the personal nature of information requested. *Penn State*, 935 A.2d at 540. At issue was a request under the prior RTKA for salary and related information of university employees who voluntarily participated in the State Employees Retirement System (SERS), which the State Employees' Retirement Board granted. *Id.* at 532. Notably, excluded from the request was personal information of the employees including their social security numbers, telephone numbers, and home addresses. *Id.* at 539. If such information had been a part of the request, the Court noted it "would have greater difficulty concluding that the public interest asserted here outweighs those basic rights to privacy." *Id.* Ultimately, the Court determined that "[t]here can be no reasonable expectation that the Commonwealth will keep its finances secret from the general public," *id.* at 540, and as such the requested information was subject to disclosure. In reaching this conclusion, the Court considered whether the individuals had a reasonable expectation of privacy and whether they voluntarily submitted their information. *Id.* at 539.

"[C]ertain factors are constant when evaluating a privacy interest in information," such as "an individual's reasonable expectation that the information is of a personal nature." *Butler Area Sch. Dist. v. Pennsylvanians for Union Reform*, 172 A.3d 1173, 1184 (Pa. Cmwlth. 2017) (internal citation omitted). "When information is public as a matter of statute, it is unreasonable for a person to expect that it is of a personal nature." *Id.* (internal citation omitted). As here, the appellants in *Penn State* argued they had a reasonable expectation of privacy in the requested information because the university regarded such information as confidential. 935 A.2d at 539. However, the Court explained that, while the appellants may have had a **subjective** expectation of privacy, they did not have an **objective** expectation of

21

privacy because SERS is a Commonwealth agency, and its records are public. *Id.* at 537, 539. In concluding the release of the requested records was not precluded, the Court noted university employees who elected to participate in SERS were, by statutory definition, state employees, "[i]t [wa]s well known that the salaries paid to Commonwealth legislators, judges, executive officers and their supporting staff are public information," and these university employees were not to be treated any differently. *Id.* at 540.

In this case, unlike in *Penn State*, Appellant cites no statute that expressly makes public the personal information of donors to the Fund, nor is there any evidence in the record suggesting that Objectors should have known that their personal information would be disclosed to the public when they donated to the Fund. As even our Supreme Court has recognized "records that would disclose the identity of individual donors are generally exempted from disclosure under the RTKL." *Prince II*, 219 A.3d at 605-06 (citing 65 P.S. § 67.607(b)(13)). After receipt, the City itemized their donations on a donor spreadsheet. It was only during this litigation that our Supreme Court held that this spreadsheet listing voluntary donations was a financial record, and therefore that the donor exception articulated in Section 708(b)(13) of the RTKL was not applicable. The Supreme Court was presented with two different interpretations of the terms "account, voucher, or contract," which are part of the definition of "financial record" in Section 102 of the RTKL, 65 P.S. § 67.102. *Prince II*, 219 A.3d at 610-11. Under the City's interpretation, the donor spreadsheet **was not** a financial record and **subject to the donor exception**. Under Appellant's interpretation, the spreadsheet **was** a financial record and **not** subject to the donor exception. Our Supreme Court recognized that "the relevant statutory terms [were] capable of multiple reasonable interpretations,"

22

*Prince II*, 219 A.3d at 611, including an interpretation which would support that the donor spreadsheet is **not** a financial record, as both the trial court and this Court had determined. Given the recognition by our Supreme Court that the City's interpretation was reasonable, and upon review, the first time a donation was subject to disclosure, we agree that Objectors had a reasonable expectation, at the time they donated to the Fund, that their personal information would not be subject to disclosure under the donor exception.

Appellant next argues Objectors' personal information is disclosable due to the voluntary nature of their donation, which he contends is similar to the voluntary participation of the appellants in *Penn State*, in which the Supreme Court stated, "[t]he minute any individual or entity voluntarily submits any information to the Commonwealth **for the purpose of deriving a financial benefit and acquires such benefit or a contractual interest therein**, that information ceases to be private in nature." 935 A.2d at 539-40 (emphasis added). At the outset, we note that, the spouse of John Doe 3, whose personal information falls within the ambit of the request, did not voluntarily make a donation to the Fund. Rather, her husband made a donation, without her consent and knowledge, using a joint marital checking account. Thus, John Doe 3's spouse cannot be said to have voluntarily donated to the Fund. While the remaining Objectors chose to donate to the Fund, they are unlike the university employees in *Penn State* whose voluntary participation in SERS resulted in their receiving financial benefits. There is nothing in the record, and Appellant does not argue, that Objectors received any type of financial benefit or acquired a contractual interest relating to the Fund as a result of their voluntary donations. The purpose of the Fund was to collect donations to aid the City in paying its insurance premium to defend the legal validity of its already-enacted firearm

23

ordinances. Notably, Objectors' donations in the aggregate, amounted to $850.00. This amount is nominal in light of the amount of the premium, which was $250,000.00. There is no evidence that Objectors derived any financial benefit or other interest because of their donations. As such, we are not persuaded by Appellant's argument that common pleas erred in its balancing because Objectors' personal information is subject to disclosure because they voluntarily made donations to the government.

Appellees assert that common pleas' balancing of the interests in this matter is analogous to the balancing that occurred in *Sapp Roofing*, in which a plurality of our Supreme Court held that the public interest in ensuring the school district was complying with the Prevailing Wage Act[14] was outweighed by the individual's right to privacy and personal security, and thus, the personal information was not to be released. *Sapp Roofing*, 713 A.2d at 630. In that case, a union requested payroll records from a school district and argued that the records were "vital to its efforts to ensure that the school district complied with the Prevailing Wage Act, and that there is a strong public interest in monitoring compliance with that act." *Id.* Sapp Roofing argued that disclosure of the personal information of their employees, including their names and home addresses, and other information, would infringe upon their employees' privacy interests. *Id.* The Court concluded the employees' privacy interests were stronger than the public interest, noting "[t]he disclosure of personal information (names, addresses, social security numbers, and phone numbers) reveals little, if anything about the government's . . . compliance with the Prevailing Wage Act." *Id.* The Court noted that the union failed to "explain how the disclosure of this personal information for the purpose of monitoring Prevailing Wage Act

---

[14] Act of August 15, 1961, P.L. 987, *as amended*, 43 P.S. §§ 165-1-165-17.

24

compliance overcomes the individual employees' strong privacy interests." *Id.* The Court further stated, "[e]ven if we agree with the union that the public has an interest in enforcing the prevailing wage laws through 'monitoring,' the requested information would not enhance enforcement of the Prevailing Wage Act by the government." *Id.*

Similar to the requester in *Sapp Roofing*, Appellant is focused on obtaining the personal information – the names and full home addresses – of non-government employees, the donors. We note that the City has already disclosed to Appellant: the date of the donation, the donation amount, and the city and state of each donor's home address. Further disclosed through the Objections is that Objectors are individuals, rather than an advocacy group. Appellant maintains that "at all times" he has requested the full names of the donors. (Appellant's Br. at 10.) However, Appellant also acknowledges that, at oral argument before common pleas, his counsel "expressed a willingness, in the event the court was unwilling to provide entire addresses, to compromise[] for the disclosure of **generalized information about area of residence**," although this "is only one facet of what . . . Appellant . . . sought." (*Id.* at 9-10 (emphasis added, footnote omitted).) As stated by common pleas, Appellant has not provided any evidence as to how the disclosure of Objectors' full names and home addresses will enhance the public interest, (Common Pleas Suppl. Order at 1), identified to common pleas as being that "the public has an interest in knowing who is supporting the . . . [F]und and, . . . **particularly whether or not those individuals reside in Pennsylvania and the City of Harrisburg**," (R.R. at 191a-92a (emphasis added)), to the point that this interest "overcomes the individual [Objectors'] strong privacy interests," *Sapp Roofing*, 713 A.2d at 630. As it is similar to the Supreme Court's conclusion in *Sapp*

25

*Roofing*, we discern no error in common pleas' determination where knowledge of Objectors' names and full home addresses is not needed to achieve the stated purpose of knowing whether the donors to the Fund, and Objectors in particular, resided in Pennsylvania and/or the City.

Based on the foregoing, common pleas' application of the *PSEA* balancing test was not in error. The mere existence of entitlement to the information sought by Appellant under the RTKL is not sufficient to warrant disclosure of the information sought because the right to information under the RTKL will yield to "the constitutional rights of the citizens of this Commonwealth to be left alone[.]" *PSEA*, 148 A.3d at 364. We agree with common pleas that the public has an interest in knowing whether the individuals who contributed to the Fund reside in the Commonwealth or if non-residents of the Commonwealth are attempting to influence Pennsylvania politics, and that the information already disclosed to Appellant, including the city and state of Objectors' home addresses, accomplishes that purpose. Common pleas found that, when this public interest was weighed against Objectors' privacy rights in their personal information (their names and home addresses), Objectors' rights "greatly" outweigh the public's interest in disclosure. (Common Pleas' Order at 2; Common Pleas Suppl. Order at 1.) Given that the particular public interest identified by Appellant is advanced by the already-made disclosure of the city and state of the donors' addresses and the credited evidence regarding the potential harm to Objectors' reputations and personal security if that information is disclosed, we cannot say that common pleas erred in finding that the former is outweighed by the latter.

### B. Absence of Evidentiary Hearing and Verifications Signed by Counsel, not the Individual Objectors

26

Appellant also argues common pleas erred in granting the Objections without holding an evidentiary hearing because the Objections, and the allegations therein, were not verified by Objectors, but by their counsel. (Appellant's Br. at 13.) Appellant asserts that he "has not sought the protections of procedural due process in relation to determining whether the information sought is encompassed within the allowances of the RTKL, but in relation to evaluating and responding to the Objections raised by [Objectors.]" (*Id.* at 15.) Appellant also asserts that there is no testimony or evidence in the record to support the Objections, despite Appellant raising concerns about the validity of Objectors' claims and requesting that they sign verifications. (*Id.*) "[Objectors] have never been identified, no evidence of any of their claims has ever been submitted, even for *in camera* review, and Appellant had no opportunity to investigate or challenge any of their claims." (*Id.* at 14.)

Appellees respond that Appellant has no right to an evidentiary hearing. (Objectors' Br. at 17; City's Br. at 24.) Objectors argue that an evidentiary hearing would be unnecessary because there exists no disputed issue of material facts, and Appellant has not presented any argument as to what evidence there would be to support a public interest in disclosure of Objectors' personal information. (Objectors' Br. at 18.) The City contends that Appellant's argument for an evidentiary hearing is unpersuasive because while Objectors' "particular circumstances and specific concerns" assist them in establishing that their privacy interest outweighs the public's interest in disclosure, a hearing is not required to determine that their asserted interests outweighed the public interest. (City's Br. at 26.) "This is because generalized concepts and rights of privacy support that the requested information . . . outweighs the public interest in question." (*Id.*) "An evidentiary hearing where [] Object[ors] would be cross-examined on these points

27

would be inappropriate, unconstitutional, and unnecessary," and would violate Objectors' "privacy rights and effectively subjects their private information to disclosure." (*Id.* at 26-27.)

We are not persuaded by Appellant's arguments that common pleas erred in granting the Objections without holding an evidentiary hearing. "[D]ue process does not require a hearing because the right to information provided by the RTKL does not involve a property right because access to public records is a 'privilege' granted by the General Assembly." *Prison Legal News v. Off. of Open Recs.*, 992 A.2d 942, 947 (Pa. Cmwlth. 2010). "[N]either the RTKL nor the courts have extended a right to discovery or a right to due process to a requesting party in a RTKL action." *Sherry v. Radnor Twp. Sch. Dist.*, 20 A.3d 515, 519 (Pa. Cmwlth. 2011). Section 1309 of the RTKL, 65 P.S. § 67.1309, provides that "[t]he provisions of 2 Pa.C.S. (relating to administrative law and procedure) shall not apply to [the RTKL] unless specifically adopted by regulation or policy." Thus, "the provisions of the Administrative Agency Law[, 2 Pa.C.S. §§ 501-508, 701-704,] requiring an evidentiary hearing do not apply." *Sherry*, 20 A.3d at 519 (citing *Prison Legal News*, 992 A.2d at 947).

Further, in *Prison Legal News*, we determined that, "even assuming *arguendo* that the RTKL does create a right that rises to the level of a property right in the requested information, due process would not require a full-blown hearing." 992 A.2d at 947. Where "[t]he private interest affected – access to government documents – is relatively minor," and the stated public interest in *Prison Legal News*, which was "the government's interest in reducing the fiscal and administrative burdens of responding to RTKL requests so that it can concentrate its resources on its regular duties," was high, "the likelihood that a full-blown hearing would lessen

28

erroneous deprivations of the right compared to reliance on written submissions [was] low." *Id.*

Here, as previously determined, common pleas did not err in concluding that Objectors' privacy interest in their personal information outweighs the public's interest in disclosure. Similar to the government's interest asserted in *Prison Legal News*, Objectors' privacy interest, as reflected in their written submissions, is high. As for the identified public interest, the City has already disclosed information relating to Objectors, including: the date of the donation, the donation amount, and the city and state of each donor's home address, which reflects that the donations came from within the Commonwealth, the primary concern identified by Appellant's filings and representations to the courts. Further, the written submissions, the Objections, reflect that Objectors were individuals and not advocacy groups. Finally, Objectors' donations, amounting to $850.00, were nominal, at best, when compared to the $250,000.00 deductible the City was required to pay its insurer. Based on the foregoing, we conclude, as we did in *Prison Legal News*, that "the likelihood that a full-blown hearing would lessen erroneous deprivations of the right compared to reliance on written submissions is low," *id*., particularly where holding an evidentiary hearing likely could result in exposing Objectors' personal information thereby mooting their opposition. Accordingly, we discern no error or abuse of discretion in common pleas granting Objectors relief without holding an evidentiary hearing.

Appellant also argues that the Objections should not have been granted in the absence of an evidentiary hearing or verification of Objectors' allegations. In Appellant's Answer to the Objections, (R.R. at 101a, 102a, 111a, 112a, 121a), he asked common pleas to order the verifications to be signed by Objectors, which

29

could be placed under seal and viewed only by the judge, if necessary. In support, he cited to *Doe v. Zarkin*, 40 Pa. D. & C. 4th 100 (1998), where the common pleas court directed that the plaintiffs, who filed an action under fictitious names, sign the verifications with their legal names. *Id.* at 107. This request was not granted by common pleas.

Appellant argues that without Objectors' signatures on the verifications, he is unable to investigate or challenge their claims because he does not know their identities and, so cannot test how disclosure of their personal information would cause harm to their reputations and personal security. He also asks this Court to reverse and remand to common pleas to conduct an evidentiary hearing so he can investigate and challenge Objectors' allegations.

Here, the Objections were verified by Objectors' counsel, an officer of the court. Specifically, the verifications read,

> I, [Counsel], attorney for [O]bjectors herein, hereby state that the facts set forth in the foregoing Objection[s] of [Objectors] To Public Disclosure of [Their] Names, Home Address, Check Number, and Telephone Number, are true and correct to the best of my knowledge, information, and belief, based on information provided to me by [Objectors]. I understand that the statements herein are made subject to the penalties of 18 Pa.C.S. § 4904 relating to unsworn falsification to authorities.

(R.R. at 22a, 80a, 94a.) Common pleas was satisfied that, under the circumstances of the instant case, a verification by Objectors' counsel, an officer of the court and made under penalties of the law, achieves the purpose of verifications "to defend a party against spurious allegations." *Monroe Contract Corp. v. Harrison Square, Inc.*, 405 A.2d 954, 958 (Pa. Super. 1979). At issue here is the disclosure of Objectors' names and addresses at the request of Appellant. Appellant apparently

30

recognized that requiring Objectors to sign a verification would render their Objections moot, unless they were filed under seal, for review by the judge, if necessary, which was his request to common pleas. Verifications are not intended to be used as "an offensive weapon designed to strike down an otherwise valid petition." *Monroe Contract Corp.*, 405 A.2d at 958. Had common pleas required signed verifications under seal, that would not have given Appellant their identities to allow him to challenge their allegations of harm. Under these circumstances, the absence of Objectors' signatures on the verifications was not consequential or prejudicial to Appellant. *See Davis v. Safeguard Inv. Co.*, 361 A.2d 893, 896 (Pa. Super. 1976) (where an affidavit was signed by appellant's counsel, not appellant, the Court determined that the error was inconsequential and not prejudicial); *George H. Althof, Inc. v. Spartan Inns of Am., Inc.*, 441 A.2d 1236, 1238 (Pa. Super. 1982) (determining that a verification attached to a complaint signed by the appellant's counsel was "not of the magnitude" to strike the judgment).

### C. Objectors' Request for Sanctions Against Appellant and Award of Attorneys' Fees

Objectors request that Appellant be sanctioned for his "frivolous" appeal and that attorneys' fees be awarded in their favor, citing Section 1304(b) of the RTKL, 65 P.S. § 67.1304(b), and Section 2503(9) of the Judicial Code, 42 Pa.C.S. § 2503(9). (Objectors' Br. at 24.) Objectors argue that Appellant's appeal is "frivolous, vexatious, and pursued in bad faith" because it is "in contradiction to his legal counsel's concessions" that the stated public purpose would be achieved if the general location information of Objectors was disclosed, which is what common pleas ordered the City to disclose in its Order. (*Id.* at 23-24.) Appellant responds that Objectors are not entitled to sanctions pursuant to Section 1304(b) because the

31

provision is inapplicable to Objectors.  (Appellant's Reply Br. at 8.)  Appellant also contends that his counsel did not concede that generalized location information for Objectors would satisfy the stated public interest.  (*Id.* at 9-10.)

Upon review, we agree with Appellant that Objectors are not entitled to relief under either Section 1304(b) of the RTKL or Section 2503(9) of the Judicial Code. Section 1304(b) of the RTKL provides, "[t]he court may award reasonable attorney fees and costs of litigation or an appropriate portion thereof **to an agency or the requester** if the court finds that the legal challenge under this chapter was frivolous." 65 P.S. § 67.1304(b) (emphasis added).  Thus, by its terms, Section 1304(b) does not apply to Objectors because they are neither an agency nor the requester.

Section 2503(9) of the Judicial Code authorizes the imposition of a reasonable counsel fee as a taxable cost to "[a]ny participant who is awarded counsel fees because the conduct of another party in commencing the matter or otherwise was arbitrary, vexatious or in bad faith."  42 Pa.C.S. § 2503(9).  Contrary to Objectors' assertions, the record does not support the conclusion that Appellant's appeal is arbitrary, vexatious, or in bad faith.  Although Objectors rely on the exchange between common pleas and Appellant's counsel at oral argument, which they characterize as a concession, Appellant maintains that his counsel believed that "the [c]ourt's question was solely about the specific information to be provided relevant to the donors' addresses . . .  and was not a concession to the non-disclosure of the donors' names," (Appellant's Emergency Motion for Reconsideration, R.R. at 217a).  Additionally, it was not Appellant's counsel's "understanding during the hearing that he was agreeing to the non-disclosure of the names, as [he] never specifically stated such and his client never agreed or authorized him to take such a position." (*Id.* at 217a-18a.)  We do not read this exchange as broadly as Objectors

urge or as rendering Appellant's appeal frivolous because, as noted by common pleas in its Supplemental Order, it "would have granted the Objections even without this statement from [Appellant's] counsel." (Common Pleas' Suppl. Order at 1.) Based on the foregoing, we conclude sanctions against Appellant are not warranted for filing the instant appeal, and Objectors are not entitled to attorneys' fees.

## V.    CONCLUSION

In summary, we conclude that Appellant's appeal was timely filed, and therefore deny the Motions. We discern no error in common pleas' application of the *PSEA* balancing test to find that, in this case, Objectors' privacy interest in their names and home addresses, outweighs the asserted public interest, or in common pleas reaching this conclusion without holding an evidentiary hearing. Finally, we conclude that Appellant's appeal was not frivolous vexatious, or pursued in bad faith, and therefore deny Objectors' Request for the imposition of attorneys' fees against Appellant. Accordingly, common pleas' Order is affirmed.

_____

**RENÉE COHN JUBELIRER,** President Judge

Judge Wallace did not participate in the decision for this case.

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

City of Harrisburg            :
                              :
           v.                  :     No. 1228 C.D. 2021
                              :
Joshua Prince, Esq.,        :
                              :
               Appellant     :

# O R D E R

**NOW**, January 3, 2023, the Application for Relief in Nature of Motion to Quash Appeal and the Motion to Quash filed by the Appellees are **DENIED**, and the Order of the Court of Common Pleas of Dauphin County, entered in the above-captioned matter, is **AFFIRMED**.

_____
**RENÉE COHN JUBELIRER,** President Judge